[No. 5857.]

BRITISH AMERICA ASSURANCE CO. V. COLORADO AND SOUTHERN RAILWAY CO.

1. PLEADINGS—*Complaint—Splitting Cause of Action*—A fire set out by the locomotives of a railway company destroyed certain buildings which were insured under a policy providing that if the insurer should claim that the fire was caused by any other person or corporation the insurer should be subrogated, to the extent of its payment, to the right of recovery of the insured, against the culpable party. The insurance company paid the amount stipulated for by its policy, and the railroad company, which was charged with having occasioned the loss paid the residue of the owner's damage. The insurance company, under an assignment by the insured of his cause of action, made pursuant to a stipulation of the policy, then brought an action

against the railway company for the amount of the insurance money. There was no splitting of the cause of action—(593, 594).

2. Railway Companies—*Liability for Fires*—Ever since the act of January 13th, 1874 (Laws 1874, 224, Gen. L. 1877, 740), every railway company has been liable absolutely for damage occasioned by fires set out in operation of its road. The act of 1903 (Laws 1903, c. 153), works no change in this respect—(595).

3. Insurance—*Right of Insurer to Subrogation*—Prior to the act of 1903 (Laws 1903, c. 153, Rev. Stat. sec. 5512), an insurance company discharging the loss of a policy holder whose property was destroyed by fire set out by a railroad company was entitled to be subrogated to the claim of the policy holder against the railroad company, whether the fire was occasioned by negligence or without negligence. The act of 1903 is without effect to take away this right under contracts of insurance entered into prior to its passage (1) because, if so construed, the act is unconstitutional as impairing the obligation of the contract, (2) because, so construed, it is retrospective in operation, (3) because rights accrued under prior contracts are expressly excepted by the last clause of the statute—(597—600).

The right of the insurance company to be subrogated, being one of the considerations upon which the policy rested, vested at the date of the contract—(598).

4. Constitutional Law—*Retrospective Statutes*—A statute will not be given retrospective operation, unless this clearly appears to have been the legislative purpose—(600).

The act of April 9th, 1903 (Laws 1903, c. 153), if applied to prior transactions, so as to defeat the right of an insurance company, stipulated for in its policy, to be subrogated to the right of the insured against the party causing the loss, changes the obligation of the contract, and falls within the inhibition of the federal constitution. The statute is therefore to be construed as prospective only—(598).

5. Statutes—*Construed*—The phrase "any right which has accrued," in the final clause of c. 153 of the Laws of 1903 is to be taken in its ordinary sense, meaning any right in existence before the passage of the act. A stipulation in a policy of insurance issued before the passage of the statute, that the insurer should be subrogated to the right of recovery of the assured against the one causing the loss is excepted from the operation of the statute, even though no fire had occurred, and no loss had been sustained, when the statute took effect—(600).

*Error to Denver District Court.*—HON. BOOTH M. MALONE, Judge.

Mr. SYLVESTER G. WILLIAMS, for plaintiff in error.

Mr. E. E. WHITTED, for defendant in error.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

Action by The British America Assurance Company against the Colorado and Southern Railway Company, to recover the amount of a fire loss paid by the former to Alvin Maul. The first cause of action states that Maul was the owner of certain buildings and personal property of the value of $4310.40, located adjacent to the track and right of way of the railway company; that September 7, 1902, the insurance company insured the property against loss from fire, for three years, in the sum of $1800.00; that March 2, 1904, a locomotive of the railway company caused and set out a fire which totally destroyed the property; that the policy of insurance contained the following clause:

"If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of said payment to all right of recovery by the insured for the loss resulting therefrom, and said right shall be assigned to this company on receiving said payment."

That the insurance company, on demand, paid Maul $1800.00 on account of the loss; that Maul assigned to it all his right against the railway company to the extent and amount of the insurance so paid; that after the insurance company had paid the loss, the railway company, with full knowledge of that fact, settled with Maul on

account of the fire, for the amount of his loss in excess of the insurance so paid, but refuses to pay either Maul or the insurance company any portion of the $1800.00. The second cause of action is identical with the first, except it is alleged the railway company negligently caused and set out the fire.

Defendant demurred to the complaint upon three grounds: First, that the assignment and subrogation sought to be enforced, is prohibited by the act of 1903. Second, defect in parties plaintiff, and splitting up the cause of action. Third, that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was sustained, and judgment entered dismissing the action.

In 1874 the legislature passed the following act:

"That every railroad corporation operating its line of road or any part thereof within this state, shall be liable for all damages by fire that is set out or caused by operating any such line of road or any part thereof, and such damages may be recovered by the party damaged by the proper action in any court of competent jurisdiction; provided, the said action be brought by the party injured within three years next after the said damage shall have been inflicted or caused."—General Laws 1877, 740.

In 1887 the act was amended to read:

"Every railroad corporation operating its line of road, or any part thereof, shall be liable for all damages by fire, that is set out or caused by operating any such line of road or any part thereof, and such damages may be recovered by the party damaged by the proper action, in any court of competent jurisdiction; * * * Provided, The said action be brought by the party injured within three years next after it accrues."—Session Laws 1887, 368.

In 1903 an act was passed entitled:

"An act to provide a liability against railroad companies for damages caused by fire, and to repeal all acts and parts of acts in conflict therewith."

"Section 1.   Every railroad company operating its line of road, or any part thereof, within this state shall be liable for all damages by fires that are set   out or caused by operating any such line of road, or any part thereof, in this state, whether negligently or otherwise; and such damages may be recovered by the party damaged, by the proper action, in any court of competent jurisdiction; Provided, The said action be brought by the party injured within two years next ensuing after it accrues; and Provided further, That the liability herein imposed shall inure solely in favor of the owner or mortgagee of the property so damaged or destroyed by fire; and the same shall not pass by assignment or subrogation to any insurance company that has written a policy thereon; Provided, That nothing in this act shall be held to apply to or in any manner affect any right which has accrued prior to the passage hereof or any cause or suit now pending."

"Section 2.   All acts and parts of acts in conflict with this act are hereby repealed"—Session Laws 1903, 404.

2.   Maul's loss was paid in full; a portion by the plaintiff; the balance by the defendant.   He has no further right or interest in the claim against the railway company.   When it settled with him, it narrowed the transaction down to the right of the insurance company to recover against it.   The statute provides that suits shall be brought in the name of the real party in interest, and the parties here are the only ones now having any interest in the transaction.   The railway company protected

itself against more than one suit when it paid all Maul's loss except the insurance. This is not a splitting up of Maul's right against the railway company, because there is but one item remaining to be determined, and that is the right of the insurance company to recover from the railway company, and it is therefore impossible to split the cause of action. All liability of the railway company to Maul on account of the fire has been settled.—*Liverpool Steam Co. v. Insurance Co.*, 129 U. S. 397; *St. Louis Ry. Co. v. Insurance Co.*, 139 U. S. 235; *Marine Insurance Co. v. St. Louis Co.*, 41 Fed. 643; *Norwich Insurance Society v. Standard Oil Co.*, 59 Fed. 984; *Fairgrieve v. Marine Co.*, 94 Fed. 686; *Swarthout v. Ry. Co.*, 49 Wis. 625; *Insurance Company v. Railway Company*, 73 N. Y. 399; *C. B. & Q. Ry. Co. v. German Ins. Co.*, 2 Kas. App. 395; *Hustisford Ins. Co. v. C. M. & St. P. Ry. Co.*, 66 Wis. 58; *Hartford Ins. Co. v. Wabash Ry. Co.*, 74 Mo. App. 106; *A. T. & S. F. Co. v. Home Ins. Co.*, 59 Kas. 432.

3. The statute of 1903 provides that every railroad company shall be liable for all damages by fire set out or caused by the operation of its road, whether negligent or otherwise. The ancient common law held one liable for all damages by fire set out or caused by him, and the statute imposing absolute liability for such damages, is said to be declaratory of this ancient common law of England. But according to modern common law as interpreted by our American courts, in the absence of a statute imposing absolute liability, negligence is the gist of the action.—*U. P. Ry. Co. v. De Busk*, 12 Colo. 299.

The session laws of 1874 and 1887, provide that every railway company shall be liable for all damages by fire set out or caused by the operation of its road. The corresponding portion of the act of 1903 is identical,

except that it contains the additional clause *"whether negligent or otherwise."* Our statute for more than thirty years has continuously, without change, imposed upon railroad companies absolute liability for all damages from fire set out in the operation of their roads, whether negligence entered into the cause or not, and the only question to be determined in cases of this character was, did the railway company set out or cause the fire in the operation of its road, if so, the answer has always been the same, namely, that it was liable. The liability clause in the act of 1903 only re-enacts the pre-existing liability. The railway company since the first statute, has always been liable, whether the fire was caused by negligence or not, and the additional phrase, "whether negligent or otherwise," does not change the status of the railway company in relation to the owner in the least. The statutes eliminate all adjectives and differences as to the origin of the fire, and exact but one condition, that is, that the fire was set out or caused by the operation of the road. In this respect the act of 1903 is no different from the former acts. If the fire originated in the operation of the road, it makes no difference how it otherwise occurred, the company is liable.

4. The statute is intended to provide an indemnity to owners against loss from fire caused by the operation of railroads. It was enacted to settle upon whom the loss should fall, and because of the peculiar manner in which railway companies use this dangerous element, it casts the responsibility of employing it on them. The law when this insurance contract was written, made the indemnity of the railway company primary, and that of the insurance company secondary. In other words, the owner held two sureties, each indemnifying him against loss, one based on a statute, the other on contract, in which the

statutory security was primary and the indemnity of the insurance company secondary. The owner could resort to either or both. If the insurance company was compelled to pay the loss, it was entitled under the doctrine of subrogation, to the primary security held by the owner, and could recover from the railway company any insurance paid on the loss. It is admitted this was the law as to fires negligently set out; but it is contended the doctrine does not apply to liability based on the statute. We fail to find where such a distinction is recognized. As we have said, the statutory liability of the railway company is based on the theory of indemnity or security. If the insurance company pays the loss, it is entitled to whatever primary security was held by the owner, and this includes all the liability of the railway company to the owner.— *Lumber Co. v. D. & R. G. Ry. Co.*, 17 Colo. App. 277; 2 Biddle on Insurance, sec. 1281; Harris on Subrogation, secs. 13, 606; Sheldon on Subrogation, secs. 11, 230; *Hart v. Ry. Co.*, 13 Metc. 100.

5. In consideration for the insurance, Maul promised to assign to the insurance company his right against the railway company to the extent of any loss paid by it, so that the insurance company should, to that amount, be subrogated to his right against the railway company. He assigned to the insurance company in accordance with the agreement, his claim to the extent of $1800.00, and this suit depends on that assignment, the legality of which turns on the contractual right for assignment and subrogation. The act of 1903, passed after the contract was made, and before the fire, contains a clause which provides that the liability of the railway company shall insure solely in favor of the owner of the property and shall not pass by assignment or subrogation to any insurance company having written a policy thereon. This

statute further provides that nothing therein shall be held to apply to, or in any manner affect, any right which shall accrue prior to the passage of the act. The question under consideration is, treating the anti-subrogating act of 1903 as constitutional, but not so deciding, is this contract of insurance eliminated from the operation of the statute? After careful study and investigation, we have reached the conclusion that it is, and for four reasons: First, it impairs the obligation of the contract by taking away and destroying security held by the insurance company under the contract for assignment and subrogation. Second, it is retrospective in its operation. Third, the right arose or accrued at the time the contract of insurance was made, and it is expressly exempt from the operation of the statute. Fourth, without the exempting clause, and with no constitutional inhibition, the statute, nevertheless, will be construed prospectively and not retrospectively, unless the contrary intent clearly appears.

6. Article 1, section 10, paragraph 1, of the federal constitution provides:

"No state shall * * * pass any * * * law impairing the obligation of contracts."

Article 2, section 11, of the state constitution provides:

"No law impairing the obligation of contracts, or retrospective in its operation, * * * shall be passed by the general assembly."

When the insurance company contracted to insure his property, Maul agreed, as a part of the consideration entering into the contract, in the event it paid a loss from fire caused by the operation of a railroad, that he would to the extent of the loss paid, assign his right against the railway company to the insurance company. This promise, like the premium, was a valuable consideration enter-

ing into the contract. The agreeemnt is an express contract based in part upon Maul's promise to make the assignment. That was one of the conditions upon which the policy was issued. There is a direct conflict between the contract, which provides that Maul's right against the railway company shall pass by assignment to the insurance company, and the statute, which provides that it shall not. The purpose of the act is not to° change the liability of the railway company to Maul; but to destroy the right of the owner to assign to the insurance company any liability of the railway company. The liability of the railway company to Maul depends on the law at the time of the fire, but the right to recover on an assignment of that liability depends on the law as it existed when the contract for the assignment of the right was made. The assignment was contracted for, and the contractual right for the assignment arose between the parties, or accrued, at the time the agreement was entered into. When the insurance was paid, and the assignment taken, it was the exercise of a right reaching back to the date of the contract; that is, the right existed from the time of the execution of the contract, but the assignment was not made until the loss was paid. There was a vested right, from the date of the contract, to have something upon the happening of a contingency, and any statute destroying that right, impairs the obligation of the contract. The contractual liability of the insurance company was to indemnify Maul against loss from fire, and Maul's contract for assignment was security for the indemnity. To destroy the security upon which reliance was placed, and which entered into the consideration for the policy of insurance, would impair the obligation of the contract.—*Robinson v. Magee,* 9 Cal. 81; *Atlantic Trust Co. v. The Vigilancia,* 73 Fed. 452.

7. In *Denver and South Park Railway Co. v. Woodward,* 4 Colo. 167, and later in *Perry v. Denver,* 27 Colo. 95, this court, in speaking of retrospective legislation, said: Every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new liability, in respect to transactions or considerations already past, must be deemed retrospective. If we apply the anti-subrogating act to this policy of insurance, we take away a right which accrued under a contract against which there was no law at the time when the contract was made. It would also create a different obligation than that upon which the insurance was written, and attach a new and different liability to the transaction. If the statute is permitted to defeat the right of assignment, it destroys the right to enforce the agreement made by the parties, and to that extent changes the obligation of the contract; therefore, the act is not applicable, and the contract of insurance is excluded from its operation on account of the constitutional inhibition.

8. The legislature expressly excluded from the operation of the statute, past transactions of this character, by declaring that nothing in the act should be held to apply to, or in any manner affect, any right which had accrued prior to the passage of the act. It is claimed, however, that no right accrued under the contract for assignment before the passage of the act, because there had been no fire, no loss paid, no assignment, and consequently no vested right accrued prior to the passage of the act. With this, we do not agree. The insurance company possessed the right to demand an assignment whenever a certain contingency, which might happen, did actually occur. It was the making of the contract which conferred that right to demand the assignment when the

contingency arose.  The right accrued by virtue of a contract promising to make an assignment at some future time upon the happening of the contingency.  The word "accrued" is employed in different ways.  It was evidently the intent of the legislature to use it here in its ordinary sense, which would mean any right that had arisen, that is, was in existence before the passage of the act.  In *Barnes v. Allen,* 1 Brown's Chancery Reports, 168, it is said:

"Contingent or executory interests may be as completely vested as if they were in possession."

The statute itself bars the operation of the act upon any accrued right existing under the contract of insurance at the time the act was passed.  The contractual right for assignment was co-extensive with the contract of insurance, and the right accrued when the policy was written. A lawful contract based on a valuable consideration for the delivery of a thing in the future, upon the happening of an event which may occur, is an accrued right within the ordinary and common meaning of the word.

9.  Without any constitutional restriction, and in the absence of any statute expressly excluding its application to accrued rights, the act should be construed prospectively, so as not to affect the legal character of past transactions, unless the intention so to do is unequivocally expressed by the legislature.—Endlich on Interpretation of Statutes, secs. 271, 272, 275; *McMaster v. State of New York,* 103 N. Y. 554; *Bridgewater Bank v. Copeland,* 89 Allen 140; *Davidson v. Gaston,* 16 Minn. 238; *Aurora Turnpike Co. v. Holthouse,* 7 Ind. 59; *Plumb v. Sawyer,* 21 Conn. 351.

Counsel have given much time to arguing the question of the constitutionality of the anti-subrogating clause; but a decision of that matter is unnecessary to

the determination of this case, and we express no opinion upon it.                    *Reversed and remanded.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL not **participating.**

Decided May 6, A. D. 1912.  Rehearing denied July 1, A. D. 1912.

WHITE J., dissenting:

When the legislative act of 1903 became effective, no loss had occurred under the insurance policy.   Therefore, I think no right had accrued that could be the subject of assignment under the terms of the policy.   To that portion of the opinion holding otherwise, I dissent, and am of the opinion that the anti-subrogation clause of the legislative act of 1903 is involved in a proper determination of the controversy, and its constitutionality should be determined herein.