No. 12,712.

Moore, Receiver v. Chalmers-Galloway Live Stock Company.

(10 P. [2d] 950)

Decided April 18, 1932. Rehearing denied May 2, 1932.

Messrs. HAWKINS & HAWKINS, Mr. GEORGE A. CROWDER, for plaintiff in error.

Mr. WILLIAM H. WADLEY, Mr. JOHN F. MAIL, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THE parties hereto are hereinafter designated as the receiver and the Chalmers company respectively. The property involved is referred to as the placer, the Reserve Mining Company as the Reserve company, John Fortune as Fortune, and William Monaghan as Monaghan.

The Chalmers company had judgment quieting its title to the placer. The receiver, on the ground that neither he nor the Reserve company were served or appeared therein, moved to vacate as to him. His motion was sustained, he answered, and issue was joined. On the trial he had the affirmative, and at the close of his counsel's opening statement, and based thereon, counsel for the Chalmers company moved for judgment. That motion was sustained, and to review the judgment so entered the receiver prosecutes this writ.

The first question presented is by cross-error, assigned on the order vacating the judgment as to the receiver and permitting him to answer. If that assignment be good the receiver is out and the litigation ended. Otherwise the next question is the constitutionality of our 1927 recording statute as applied to the Reserve company's unrecorded deed to the placer.

The facts essential to a comprehension of our conclusions, and either admitted in the pleadings or contained in the opening statement in question and admitted for the purposes of the motion based thereon, are as follows:

Fortune, then the owner of the placer, died in 1913, and about one year later his heirs conveyed to Monaghan. In 1915 the property was sold for taxes and struck off to the county. In 1919 Monaghan conveyed by war-

ranty deed to the Reserve company. That deed, which is the sole basis of the receiver's rights herein, if any, was never recorded and that fact was first disclosed by said opening statement. In 1921 the Chalmers company took a tax deed on said 1915 sale. If the receiver has any standing herein by virtue of his unrecorded deed from Monaghan, this tax deed is void as to him. In 1926 Chalmers took a second tax deed on said 1915 sale. Its status as to the receiver is the same as the other. In 1926 the Monaghan heirs (evidently ignorant of their ancestor's deed to the Reserve company and believing themselves owners of the title by inheritance) brought suit again the Chalmers company to quiet their title. In that action the Chalmers company had judgment. In 1927 (March 28) the recording act here in question became effective. November 10, following, the complaint herein was filed. Various persons, not including the Reserve company, were specifically named as defendants, as were also "all unknown persons who claim any interest in and to the subject matter of this action." In 1928 (February 28) summons having been published, judgment was entered in this cause in favor of the Chalmers company. In 1929 (about February 6) the receiver Moore was appointed. February 25, following, he moved to reopen the judgment theretofore entered. His motion was granted and he filed his answer and cross-complaint. In this cross-complaint he alleged that the fee title to the placer was in the Reserve company, that the Chalmers company's deeds were void, were clouds upon the title, and prayed that they be removed. June 11, following, the Chalmers company replied to the answer and answered the cross-complaint. January 13, 1930, the receiver replied to the answer to the cross-complaint. April 29, 1930, the cause came on for trial, at the opening whereof counsel for the Chalmers company, with the consent of counsel for the receiver, dismissed his complaint, as to the latter, with prejudice. Thereupon came the opening statement in question.

■ 1. The Chalmers company assigns cross-error on the order reopening the proceedings and permitting the receiver to answer, on the grounds that three terms of court had passed since the entry of the judgment, that no showing of diligence was made, and that section 81, p. 116, C. L. 1921, was not complied with. Numerous authorities in support of this position are cited. Assuming it otherwise tenable the error was waived by the dismissal as to the receiver. 18 C. J., p. 1172, §64; *Newman v. Dick*, 23 Ill. 338. Against the rule so announced counsel for the Chalmers company cite *Green v. Thatcher*, 31 Colo. 363, 72 Pac. 1078. We do not think it touches the point.

2. As a preface to the examination of the receiver's claim that the statute in question is not applicable to his deed, it should be observed that he must succeed, if at all, on a pure legal claim to a constitutional exemption therefrom. Right and equity are all against him. The Reserve company held its deed unrecorded, and apparently in strict secrecy, or with the utmost indifference, for ten years, while numerous other persons, with no intimation of its existence and every reason for faith in the legality of their claims of interest, dealt with this title or litigated concerning it. During that time the placer went to tax sale and at least two tax deeds were issued. The heirs of the Reserve company's grantor attempted by suit to clear their title. A new act was passed by the legislature making this unrecorded deed (unless excepted) invalid save between the Reserve company and its grantor and their privies, and others with actual notice. The Chalmers company, successful in the foregoing suit and depending upon its tax deeds based upon its payment of taxes on the placer, instituted the present action against all persons claiming an interest and prosecuted it to a successful conclusion. The Reserve company itself had lost its charter for failure to pay its taxes and file its annual report, and appeared in this litigation, within three days of one year after final judgment, by a receiver especially

appointed for that purpose, and moved to set aside that judgment. This was the first time, so far as this record discloses, that any intimation could have come to any one that the Reserve company or the receiver had or claimed the slightest interest in the placer, or that Monaghan, prior to his death, had transferred the title thereto.

Section 11, art. II of our Constitution reads: "No ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation * * * shall be passed by the general assembly." Section 4902, p. 1352, C. L. 1921, so far as it applies to the question here under consideration, provides that deeds to real estate "may be recorded in the office of the recorder of the county wherein such real estate is situated and from and after the filing thereof for record in such office, and not before, such deeds, * * * shall take effect as to subsequent bona fide purchasers * * * not having notice thereof." That law stood unchanged from 1868 until March 28, 1927. The question of its intent and the scope of its applicability came before the Court of Appeals in 1913, which then decided that one holding title deraigned from the United States, but whose deed was unrecorded, was unaffected by a decree quieting title in the holder of a tax deed in an action to which he was not a party, said claimant under tax deed and decree based thereon, not being a "subsequent bona fide purchaser or incumbrancer." *Carroll v. Kit Carson Land Co.*, 24 Colo. App. 217, 133 Pac. 148.

Said section 4902 was expressly repealed by the act of 1927, and in lieu thereof it was provided that no deeds "shall be valid as against any class of persons with any kind of rights, except between the parties thereto, and such as have notice thereof, until the same shall be deposited with such recorder" for record. S. L. 1927, c. 150, p. 590, §8.

Since the Chalmers company, irrespective of the validity of its tax deeds, is a person with some "kind of rights," and since the dismissal of this cause as to the

receiver, and his filing of his cross-complaint claiming a right of action based upon his unrecorded deed made him the plaintiff herein, it is clear that he is out of court if said act of 1927 is applicable to his deed, and it is equally clear that the section is applicable unless beyond a reasonable doubt it is retroactive and hence in violation of said section 11 of article II of the state Constitution.

When the act of 1927 became operative, the Reserve company had already held its deed unrecorded for more than eight years. When the receiver moved to reopen the judgment herein, that deed had been so held for almost two years after the passage of the act; hence no question of a reasonable time to record is involved. If the Reserve company was entitled to such, it had that and more. We assume, without deciding, that it would have been protected had it recorded at any time prior to trial. It elected not to do so and must succeed here, if at all, on the theory that the act can never take effect as to deeds executed before it became operative. Since the Reserve company had ample time to record its deed, had it so desired, before its status was called in question herein, all authorities holding that statutes which take away all remedies are void because retroactive are not in point, and such citations will not be noticed further than to mention that among them are: *Denver, etc., Ry. Co. v. Woodward,* 4 Colo. 162; *Brown v. Challis,* 23 Colo. 145, 46 Pac. 679.

█ █ A very comprehensive definition of a retrospective act is that it is one ''which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed.'' *Denver, etc., Ry. Co. v. Woodward, supra,* 167. But this still leaves open the question of what are such ''vested rights,'' etc.? For instance, the abolition of an old remedy, or the substitution of a new one, neither constitutes the impairment of a vested right nor the imposition of a new duty, for there is no such thing

as a vested right in remedies. *People ex rel. v. Crissman,* 41 Colo. 450, 461, 92 Pac. 949; *Lockett v. Usry,* 28 Ga. 345, 350.

 The Reserve company contends that having a warranty deed, good without record as against its adversary's tax deeds when it and they were executed, it has a vested right to so hold it unaffected by all further recording legislation. If so, one having a claim against property covered by a chattel mortgage could not be defeated by the extension of a mortgage under a statute passed after it had been executed and recorded. But the contrary is the law. *Ellison v. Tuckerman,* 24 Colo. App. 322, 331, 134 Pac. 163.

Counsel for the receiver say it is beyond the power of the legislature to deprive one of a defense. *Colorado Springs v. Neville,* 42 Colo. 219, 93 Pac. 1096. And equally beyond its power to deprive one of a cause of action. *British Co. v. C. & S. Ry. Co.,* 52 Colo. 589, 125 Pac. 508. But the act here in question, as applied to the Reserve company's deed and the facts of this record, does neither. It merely attaches a condition, a condition essential to the protection of rights conferred by the state itself and in no sense burdensome to those upon whom it is imposed. The Reserve company in effect says, "We can easily protect our deed and our rights thereunder by the simple act of recordation, but we refuse."

 In 1918 we declared certain contracts contrary to public policy. *Burns v. Wray Co.,* 65 Colo. 425, 176 Pac. 487. The principle there announced remained the public policy of the state until otherwise declared by the legislature in 1923. S. L. 1923, c. 142, p. 420. That act purported to validate such contracts previously made. But, in the absence of statute, a judicial declaration of public policy is of equal force. *Oliver v. Wilder,* 27 Colo. App. 337, 343, 149 Pac. 275. Although the question is primarily a legislative one. *Ezell v. Rocky Mt. Co.,* 76 Colo. 409, 411, 232 Pac. 680. Hence, where there is a judicial declaration of public policy followed by contracts

contrary thereto, these cannot be validated by a subsequent statute without giving the latter a retrospective operation. For this reason *Atkinson v. Colorado Ass'n,* 77 Colo. 559, 238 Pac. 1117, relied upon by the receiver, is not in point.

Colorado cases, stating the fundamental principles here controlling, are neither lacking nor disputed, but no one of them, cited or known to us, comes close enough in its essential facts to be particularly helpful beyond that. Other jurisdictions, however, furnish them in abundance.

■ "One of the purposes of the recording acts is the avoidance of secret liens and the consequent frauds attendant upon them. To that end such statutes are regarded as remedial, and are to be liberally construed so as to attain the object intended." *Benner v. Scandinavian American Bank,* 73 Wash. 488, 495, 131 Pac. 1149, 1151.

A similar Iowa statute was held applicable to deeds executed prior to its passage. "These laws were not intended to affect the immediate parties to conveyances, but they were designed as a protection and shield to third persons, as an effectual barrier against fraud and imposition * * *. And as such laws are found to be vastly conducive to this noble object, they are regarded with peculiar favor by courts of justice. * * * no retrospective construction of the statute is necessary, nor are vested rights in any way disturbed. * * * Its provisions were not limited to deeds subsequently executed, but they extended equally to deeds then *in esse,* to those previously executed and acknowledged but not recorded." *Hopping v. Burnam,* 2 G. Greene (Iowa) 39, 48, 49.

In Indiana a note secured by a second mortgage was assigned without recording the assignment. Such record was not required by the law then in force. The executrix of the payee of the note released the mortgage without the knowledge of the assignee. After the assignment an act was passed requiring its record before it should bind

parties without notice. The assignee was held bound by the release.

"A statute which has for its purpose the better security and repose of titles may postpone one who voluntarily neglects to avail himself of registry acts, which enable him to give notice to all the world of his claim, to the claim of a subsequent purchaser who acted on the faith of a public record." *Connecticut Mut. Life Ins. Co. v. Talbot,* 113 Ind. 373, 380, 14 N. E. 586. "If the requirements of the limitation laws and recording acts could never be made to reach antecedent conveyances, slumbering titles might be left lying in wait, to surprise the unwary, for an indefinite term of years." Wade on Retroactive Laws, p. 16, §13.

In California a deed was executed which at the time required no record. Later an act providing for the record thereof was passed. It was contended that the statute was inapplicable to the deed, because if so, it impaired the obligation of a contract. The court held otherwise. "The contract between the original parties is not interfered with. A has passed all his title in the land, and B is the owner thereof. If B chooses to neglect his duty, as pointed out by the law, and another, in ignorance of his rights, purchases the land, how can B avail himself of his own laches?" *Stafford v. Lick,* 7 Cal. 479, 487.

As applied to the Reserve company's deed we do not think the act of 1927 was retrospective.

It is further contended that this 1927 statute, if applied to the Reserve company's deed, violates section 25, article II, of the Colorado Constitution, and section 1 of the Fourteenth Amendment to the Constitution of the United States because it deprives the company of its property without due process of law. This contention, we think, is answered by what we have already said. If the act is not retrospective and does not impair the obligation of the contract the Reserve company was deprived of nothing. It was required only to record its deed. Failing that, it was forbidden to assert it against one to whom it was

unknown. It had ample time to record, but refused. The statute took nothing from it. Whatever it lost it voluntarily threw away.

The judgment is affirmed.