**COLORADO DEPARTMENT OF SOCIAL SERVICES, Petitioner,**

v.

**SMITH, HARST & ASSOCIATES, INC., Interocean Properties, Inc., d/b/a Sheridan Manor Nursing Home, and Georgian Health Centers, Inc., d/b/a Georgian Health Center, Respondents.**

**No. 89SC341.**

Supreme Court of Colorado,
En Banc.

Jan. 14, 1991.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Joyce K. Herr, Asst. Atty. Gen., Human Resources Section, Denver, for petitioner.

Sheila H. Meer, P.C., Sheila H. Meer, James R. Gilsdorf, Denver, for respondents.

Justice VOLLACK delivered the Opinion of the Court.

The Colorado Department of Social Services (the Department) appeals the decision of the court of appeals affirming the trial court's holding that the Department did not have the power to recover by setoff monies improperly withdrawn by respondent nursing homes from patient personal needs trust fund accounts (trust fund accounts). 780 P.2d 20. We reverse.

## I.

The respondents—Smith, Harst & Associates, Inc., doing business as Cherrelyn Manor Nursing Home; Interocean Properties, Inc., doing business as Sheridan Manor Nursing Home; and, Georgian Health Centers, Inc., doing business as Georgian Health Center—operated nursing homes which participated in the medicaid program. As part of the medicaid program, these nursing homes were required to maintain trust fund accounts for the benefit of their patients' personal needs. The Department conducted four audits of the nursing homes' trust fund accounts which revealed deficiencies in the amounts of $22,283.03, $32,019.54, $12,066.67, and $3,362.50. Because Sheridan Manor Nursing Home did not maintain a trust fund account, the $3,362.50 identified in Sheridan's audit as a shortage in the trust fund account actually represented amounts due patients as a result of overpayments by patients for their care. The Department claims that the disputed amount is $54,-568.19. The Department notified the nursing homes that it intended to recover these shortages by setoffs in subsequent medicaid payments. Respondents appealed the Department's decision in four separate proceedings pertaining to each of the four audits. In the first three hearings, the hearing officer concluded that the Department had the power to recover shortages in trust fund accounts by setoffs in subsequent medicaid grants. In the fourth hearing, the hearing officer concluded that the Department lacked statutory authority to recover shortages in trust fund accounts by withholding future medicaid payments.

The nursing homes filed actions for judicial review of the first three audits, and both the nursing homes and the Department sought judicial review of the fourth audit. These actions were consolidated by the district court. The district court, relying on *Haney v. Public Utilities Commission,* 194 Colo. 481, 574 P.2d 863 (1978), ruled that section 26–4–116, 11 C.R.S. (1982), did not give the Department the power to recover shortages in the trust fund accounts by setoffs in medicaid payments to the nursing homes.

On March 31, 1988, while the case was pending on appeal, the legislature amended section 26–4–116 to expressly give the Department the power to recover shortages in trust fund accounts by withholding medicaid payments. On April 13, 1989, the court of appeals affirmed the district court's ruling and held that prior to its amendment in 1988, section 26–4–116 did not permit a setoff for trust fund account shortages. The court of appeals also held that the amended version of section 26–4–116 was prospective only and did not apply to this case.

## II.

The Department disputes the nursing homes' contention that section 26–4–116(3.-5), 11 C.R.S. (1988 Supp.), imposes a new obligation on the nursing homes. The Department claims that section 26–4–116(3.5) merely creates an alternative remedy to an already existing remedy and that retroactive application of this section is authorized by *Continental Title Co. v. District Court,* 645 P.2d 1310 (Colo.1982). We agree with the Department and hold that section 26–4–116(3.5) is remedial.

### A.

The Department asserts that it had the power to recover shortages in trust fund accounts by setoffs in subsequent medicaid grants pursuant to section 26–4–116(3.5), 11 C.R.S. (1988 Supp.), which provides:

Any overpayment of personal needs funds to a nursing care facility or an intermediate care facility by the state department due to the omission, error, fraud, or defalcation of the nursing care facility or intermediate care facility or any shortage in an audited patient personal needs trust fund shall be recoverable by the state on behalf of the recipient in the same manner and following the same procedures as specified in section 26–4–112(2) [1] for an overpayment to a vendor.

---

1. Section 26–4–112(2), 11 C.R.S. (1988 Supp.), provides in relevant part:

The nursing homes argue that the Department cannot rely on this section because it became effective after the trial had taken place. They claim that application of section 26–4–116(3.5) to this case would be an unlawful retroactive application of the law, in violation of article II, section 11, of the Colorado Constitution, and section 2–4–202, 1B C.R.S. (1980).[2]

The general prohibition against retroactive laws is stated in article II, section 11, of the Colorado Constitution, which provides: "No ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the general assembly." This section of the constitution has been construed to prohibit any act "which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already [past]." *Continental Title*, 645 P.2d at 1314 (quoting *Moore v. Chalmers–Galloway Live Stock Co.*, 90 Colo. 548, 554, 10 P.2d 950, 952 (1932) (quoting *Denver, South Park & Pacific Ry. Co. v. Woodward*, 4 Colo. 162, 167 (1878))); *accord Jefferson County Dept. of Social Servs. v. D.A.G.*, 199 Colo. 315, 317, 607 P.2d 1004, 1006 (1980). The nursing homes insist that the application of section 26–4–116(3.5) to them creates a new obligation, in violation of article II, section 11, of the Colorado Constitution.

> (2) Any overpayment to a vendor by the state department or a recipient due to the vendor's omission, error, fraud, or defalcation, including those of personal needs funds made pursuant to section 26–4–115.5, shall be recoverable in the following manner:
>     . . . .
> (b) In order to collect the amounts specified in paragraph (a) of this subsection (2), the state department may withhold subsequent payments to which the vendor is or becomes entitled and apply the amount withheld as an offset. Except where the overpayment resulted from the vendor's fraud, or under terms mutually agreed upon by the state department and the vendor, the amount withheld as an offset shall not exceed twenty-

In *Continental Title*, 645 P.2d at 1314, this court stated that "[a]pplication of a statute is not rendered retroactive and unlawful merely because the facts upon which it operates occurred before adoption of the statute." *See also Adams County School Dist. No. 1 v. District Court*, 199 Colo. 284, 611 P.2d 963 (1980). This court further stated in *Continental Title* that the "application of a statute to a subsisting claim for relief does not violate the prohibition of retroactive legislation where the statute effects a change that is only procedural or remedial in nature." *Id.* at 1315. "This is because '[t]he abolition of an old remedy, or the substitution of a new one, neither constitutes the impairment of a vested right nor the imposition of a new duty, for there is no such thing as a vested right in remedies.'" *Id.* (quoting *Jefferson County Dept. of Social Servs.*, 199 Colo. at 318, 607 P.2d at 1006 (1980) (quoting *Moore v. Chalmers–Galloway Live Stock Co.*, 90 Colo. at 554–55, 10 P.2d at 952 (1932))). Statutes are classified as remedial if they do not create, eliminate, or modify vested rights or liabilities. *See Kardoley v. Colorado State Personnel Bd.*, 742 P.2d 934 (Colo.App.1987).

## B.

Applying these principles to this case, we conclude that section 26–4–116(3.5) is remedial in nature. The effect of the subsection is to provide an alternative remedy for overpayment due to omission, error, fraud, or defalcation of trust funds, following the same procedures specified in section 26–4–112(2), 11 C.R.S. (1982).[3] Sec-

> five percent of the payment to which the vendor is entitled. The state department may also take such other steps administratively as are available for the collection of the amounts specified in paragraph (a) of this subsection (2).

**2.** Section 2–4–202, 1B C.R.S. (1980), provides: "A statute is presumed to be prospective in its operation."

**3.** Section 26–4–112(2), 11 C.R.S. (1982), provides:
> (2) Incorrect payments to vendors due to their omission, error, fraud, or defalcation shall be recoverable from the said ·vendor by deduction from subsequent payments or by the county as a debt due the state.

tion 26–4–116(3.5) does not remove or impair any vested rights acquired under existing law, and does not create a new obligation, impose a new duty, or attach a new disability with respect to transactions or considerations already past. *Continental Title*, 645 P.2d at 1314. The nursing homes have always had a fiduciary duty to maintain the patients' personal needs accounts in trust for the patients.[4] Failure to properly maintain these accounts could result in the imposition of criminal penalties.[5] Therefore, section 26–4–116(3.5) merely created a less drastic administrative remedy for an existing obligation. We hold that section 26–4–116(3.5) is remedial and gives the Department the power to recover by setoff monies improperly withdrawn by the nursing homes from patient personal needs trust fund accounts.

Accordingly, we reverse the judgment of the court of appeals.

MULLARKEY, J., does not participate.

---

Section 26–4–112(2) was amended in 1988, adding additional detailed procedures to recover funds due to vendors' omissions, error, fraud, or defalcation. *See* footnote 1, *supra* at 966.

4. Section 26–4–116(1), 11 C.R.S. (1982), provides:

**Patient personal needs trust fund required—penalty for illegal use.** (1) All personal needs funds shall be held in trust by the nursing care facility or intermediate care facility, or its designated trustee, separate and apart from any other funds of the facility, in a checking account or savings account or any combination thereof established to protect and separate the personal needs funds of the patients. At all times, the principal and all income derived from said principal in the patient personal needs trust fund shall remain the property of the participating patients, and the facility or its designated trustee is bound by all of the duties imposed by law upon fiduciaries in the handling of such fund. The facility or its designated trustee shall post a surety bond in the amount of ten thousand dollars to protect the patient personal needs trust fund.

Section 26–4–116(3), 11 C.R.S. (1982), provides:
(3) All patient personal needs trust funds shall be subject to audit by the state department. A record of a patient's personal needs trust fund shall be kept by the facility for a period of three years from the date of the patient's discharge from the facility or until such records have been audited by the state department, whichever occurs last.

5. Section 26–4–116(5), 11 C.R.S. (1982), provides:

(5)(a) It is unlawful for any person to willfully or knowingly apply, spend, commit, pledge, or otherwise use a patient personal needs trust fund for any purpose other than the personal needs of the patient to purchase necessary clothing, incidentals, or other items of personal needs which are not reimbursed by any federal or state program.
(b) Any person who violates any of the provisions of this subsection (5) is guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of five hundred dollars, or by imprisonment in the county jail for not more than ninety days, or by both such fine and imprisonment.