AMERICAN COMPENSATION INSURANCE COMPANY and Fast Engineering Corporation, a/k/a Denver Mineral Engineers, Petitioners and Cross–Appellees,

v.

**Mark W. McBRIDE, Respondent and Cross–Appellant,**

and

**Industrial Claim Appeals Office of the State of Colorado, Respondent.**

**No. 02CA2416.**

Colorado Court of Appeals, Div. I.

May 20, 2004.

Certiorari Denied Jan. 31, 2005.

 

 
 

Thomas Pollart & Miller, LLC, Douglas A. Thomas, Greenwood Village, Colorado, for Petitioners and Cross–Appellees.

The Frickey Law Firm, Janet L. Frickey, Lakewood, Colorado, for Respondent and Cross–Appellant.

Ken Salazar, Attorney General, Eric S. Rothaus, Assistant Attorney General, Denver, Colorado, for Respondent.

Opinion by Judge TAUBMAN.

In this workers' compensation proceeding, Fast Engineering Corporation and its insurer, American Compensation Insurance Company (collectively Fast Engineering), seek review of the final order of the Industrial Claim Appeals Office (Panel) not permitting garnishment, for outstanding child support payments, of permanent partial disability (PPD) benefits paid to Mark W. McBride. McBride also seeks review of the Panel's determination that the benefits paid after maximum medical improvement (MMI) were temporary total disability (TTD) benefits subject to garnishment. We affirm in part and set aside in part.

In 2000, McBride sustained an admitted injury to his neck, low back, and right shoulder. In February 2000, Fast Engineering began paying fifty-five percent of McBride's TTD benefits to the Colorado Family Support Registry (CFSR) pursuant to an administrative lien and attachment authorized by § 8–42–124(6), C.R.S.2003.

On January 29, 2001, McBride's authorized treating physician placed him at MMI and assigned a permanent impairment rating of sixteen percent of the whole person. Fast Engineering admitted liability for TTD benefits up to the date of MMI found by McBride's authorized treating physician, but requested a division-sponsored independent medical evaluation (DIME) as to the issue of impairment. Pending the results of the DIME, Fast Engineering continued to pay TTD benefits.

On September 26, 2001, Fast Engineering filed a final admission of liability (FAL) consistent with the results of the DIME, which rated McBride's permanent impairment at fourteen percent of the whole person.

In an evidentiary hearing before the administrative law judge (ALJ), McBride argued that his benefits had been improperly reduced to satisfy child support arrearages pursuant to the administrative lien and attachment. He asserted that his PPD benefits were exempt from such attachment under the version of § 8–42–124(6) in effect on the date of his compensable injury and that all benefits paid to him after he reached MMI and before Fast Engineering's FAL were improperly classified as TTD benefits and subjected to attachment. McBride also argued that the DIME rating was incorrect because it omitted any rating for his separate shoulder and back injury.

The ALJ concluded that the amendment to § 8–42–124(6), which was enacted on May 31, 2001, and which permitted the attachment of PPD benefits, see Colo. Sess. Laws 2001, ch. 214 at 720, was procedural in nature and could be immediately applied to pending claims. The ALJ further found that the benefits paid to McBride after he reached MMI, but before the DIME report and the FAL, were TTD benefits and were subject to the child support garnishment order. The ALJ also found that McBride had overcome the DIME rating by clear and convincing evidence and that the PPD award should be calculated based upon an eight percent upper extremity rating for the shoulder injury and an eighteen percent whole person rating for McBride's low back and neck conditions.

On review, the Panel held that the amended version of § 8–42–124(6) was substantive and could not be applied to claims for compensable injuries occurring before its passage. Therefore, it concluded that McBride's PPD award had been reduced impermissibly by the fifty-five percent paid to CFSR. However, the Panel rejected McBride's contention that the benefits paid after MMI were improperly classified as TTD benefits subject to garnishment. The Panel noted that administrative rules precluded Fast Engineering from suspending payment of McBride's TTD benefits while awaiting completion of the DIME process and provided Fast Engineering with a full offset for the TTD payments made after MMI against the award of PPD benefits, regardless of the fact that a significant portion of those benefits was paid to CFSR. The Panel also upheld the ALJ's determination that the DIME had been overcome by clear and convincing evidence.

## I. Standing

■ Because Fast Engineering stated in its opening brief that its liability to McBride under the amended version of § 8–42–124(6) would be the same, whether the benefits were paid directly to McBride or were subject to garnishment, and regardless of whether that amendment is applied retroactively, we asked the parties to address whether Fast Engineering had standing to argue that the amended statute should be applied retroactively to McBride's award of PPD benefits. In both supplemental briefs and at oral argu-

ment, McBride and the Panel argued that Fast Engineering lacked standing to raise this issue. We disagree.

■ Standing is a jurisdictional prerequisite that permits a party to bring suit only to protect a cognizable interest. Whether a party has standing is determined as of the time the action is filed. See Grossman v. Dean, 80 P.3d 952 (Colo.App.2003).

■ To determine standing, we must consider whether the complainant was injured in fact and whether the injury was to a legally protected right. Injury in fact may be proved by showing that the action complained of has caused or has threatened to cause injury. Romer v. Colo. Gen. Assembly, 810 P.2d 215, 218 (Colo.1991).

Here, it may seem at first that Fast Engineering has not been injured in fact by its decision to pay fifty-five percent of McBride's PPD award to CFSR, given that it was otherwise obligated to pay that money directly to McBride. However, because the Panel concluded that such payments were improper, Fast Engineering, at the very least, was threatened with the possibility of incurring additional liability to repay McBride the amount of PPD benefits paid to CFSR or, alternatively, legal fees to recover its payments to CFSR. Conversely, had Fast Engineering not applied the administrative lien to PPD benefits, it risked having sanctions imposed against it. See § 26–13–122(1)(j), C.R.S.2003 (if workers' compensation employer or insurance company wrongfully fails to deduct and withhold benefits pursuant to administrative lien for child support, it may be subject to liability and sanctions).

Further, while we agree with McBride and the Panel that Fast Engineering is not in the class of persons these statutes are intended to protect, that is, intended recipients of child support, Fast Engineering nevertheless has a legally protected interest in ensuring that its payments to CFSR are made correctly. Accordingly, we conclude that Fast Engineering has standing to argue that the Panel erred in holding that the amendment to § 8–42–124(6) could not be applied retroactively to McBride's award of PPD benefits.

## II. Retrospectivity of Amendment to § 8–42–124(6)

■ Fast Engineering contends that the Panel erred in characterizing the amendment to § 8–42–124(6) as substantive legislation which could be applied only to injuries suffered after May 31, 2001, and thus could not be applied to McBride's award of PPD benefits. We agree.

### A. Substantive and Procedural Framework

Formerly, workers' compensation benefits could not be attached to satisfy judgments. Section 8–42–124(6) created an exception that permitted garnishment of TTD benefits and permanent total disability benefits for enforcement of child support orders. *See In re Marriage of Hamby,* 954 P.2d 635 (Colo.App. 1997). As noted, § 8–42–124(6) was amended effective May 31, 2001, to extend the exception to PPD benefits.

Section 8–42–124(6) as amended provides: Nothing in this section shall be construed to limit in any way the right of any employee to full payment of any award which may be granted to said employee for permanent partial or permanent total disability under the provisions of articles 40 to 47 of this title [the Workers' Compensation Act]; except that benefits for permanent total disability and permanent partial disability shall be subject to wage assignment or income assignment as wages pursuant to section 14–14–102(9), C.R.S., and subject to garnishment as earnings pursuant to section 13–54.5–101(2)(b), C.R.S., and subject to administrative lien and attachment pursuant to section 26–13–122, C.R.S., for purposes of enforcement of court-ordered child support.

Because the amendment did not specify an effective date, Fast Engineering maintains that it was effective upon its enactment and that it must be applied immediately because it is remedial and procedural in nature. We agree.

■ Absent legislative intent to the contrary, a statute is presumed to operate prospectively, that is, it operates on transactions occurring after its effective date. A statute is retroactive if it operates on transactions that have already occurred or on rights or obligations that existed before its effective date. *In re Estate of DeWitt,* 54 P.3d 849 (Colo.2002).

■ In workers' compensation cases, the substantive rights and liabilities of the parties are determined by the statute in effect at the time of a claimant's injury, while procedural changes in the statute become effective during the pendency of a claim. *Colo. Comp. Ins. Auth. v. Indus. Claim Appeals Office,* 907 P.2d 676, 678 (Colo.App. 1995). For purposes of retrospectivity analysis, substantive statutes relate to the creation, elimination, or modification of vested rights or liabilities, while procedural statutes relate only to remedies or modes of procedure to enforce such rights or liabilities. *See In re Estate of DeWitt, supra,* 54 P.3d at 854 n. 3.

Here, the application of § 8–42–124(6) as amended, if applied to McBride, would be retroactive because it would apply to his right to receive PPD benefits and his obligation to pay child support that existed before the effective date of the amendment. Whether that application would be retrospective depends in part on whether McBride has a vested right not to have his PPD benefits subject to an administrative lien and attachment. We address that issue below.

■ Although retroactive application of a statute is disfavored, such application is not necessarily unconstitutional. Where a statute effects a change that is procedural or remedial, it may be applied retroactively. However, when a statute's retroactive application is unconstitutional, it is deemed retrospective. *In re Estate of DeWitt, supra; In re Estate of Moring v. Colo. Dep't of Health Care Policy & Fin.,* 24 P.3d 642 (Colo.App. 2001).

Colo. Const. art. II, § 11 provides, "No ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation ... shall be passed by the general assembly." *See Lobato v. Indus. Claim Appeals Office,* 94 P.3d 1173, 2003 WL 21283770 (Colo.App. No. 02CA1145, June 5, 2003).

■ Thus, a law violates this constitutional prohibition against retrospective legislation if it (1) takes away or impairs vested

rights acquired under existing laws, (2) creates a new obligation, (3) imposes a new duty, or (4) attaches a new disability with respect to transactions or considerations already past. *Trailer Haven MHP, LLC v. City of Aurora,* 81 P.3d 1132 (Colo.App.2003).

We must use a two-step process to determine whether a statute violates the retrospectivity provision of the Colorado Constitution. First, a reviewing court must determine whether the General Assembly intended the challenged statute to operate retroactively. To overcome the presumption of prospectivity, the statute must reveal a clear legislative intent of retroactivity. However, express language of retroactive application is not required to find such retroactive intent. *In re Estate of DeWitt, supra.*

Second, if the reviewing court determines that the General Assembly intended retroactive application, the court must determine whether the challenged statute is unconstitutionally retrospective. *In re Estate of DeWitt, supra.*

## B. Legislative Intent

Applying the first prong of this analysis, we conclude that the General Assembly intended that the amended § 8–42–124(6) be applied retroactively. Our conclusion is based upon several factors.

First, as noted, § 8–42–124(6) provides that workers' compensation benefits, including PPD benefits, are subject to administrative lien and attachment pursuant to § 26–13–122, C.R.S.2003. Section 26–13–122(6), which contains the provisions to implement the administrative lien and attachment of workers' compensation benefits, provides:

> Subsections (2) and (3) of this section shall apply to all child support obligations ordered as part of any proceeding, *regardless of when the order was entered,* and all such child support obligors shall be subject to notice of administrative lien and attachment as described in subsections (2) and (3) of this section.

(Emphasis added.)

Because the administrative lien and attachment procedures are intended to apply to all child support obligations regardless of when a child support order was entered, we conclude that the General Assembly did not intend that the presumption of prospectivity would apply to its amendment to § 8–42–124(6).

Second, the prior statutory amendments to § 8–42–124(6), detailed in *In re Marriage of Hamby, supra,* became effective on specific dates, rather than on or after specified dates of injury. *See* Colo. Sess. Laws 1987, ch. 113, § 8–52–107(1) at 594 (with exceptions not applicable here, act became effective on date of enactment, July 10, 1987); Colo. Sess. Laws 1990, ch. 62, § 8–52–107(1) (repealed and renumbered as § 8–42–124(1); act effective July 1, 1990); Colo. Sess. Laws 1992, ch. 40 at 218 (act effective August 1, 1992).

Third, the amendment to § 8–42–124(6) does not expressly refer to a date of injury. In that regard, it differs significantly from other amendments to the Workers' Compensation Act, which stated that amendments applied to injuries on or after a specific date. *See Nye v. Indus. Claim Appeals Office,* 883 P.2d 607 (Colo.App.1994)(statutory amendment regarding offset of permanent total disability benefits became effective July 1, 1989, and was expressly made applicable to all claims for injuries on or after that date); *Martinez v. Reg'l Transp. Dist.,* 832 P.2d 1060 (Colo.App.1992)(1991 amendments to Workers' Compensation Act became effective July 1, 1991, and applied to cases in which a worker's injury occurred on or after that date).

Accordingly, these factors lead us to conclude that the presumption of prospectivity has been overcome.

## C. Retrospectivity

We next consider whether the amended § 8–42–124(6) takes away or impairs a vested right acquired under existing laws and conclude that it does not.

A vested right is one that is not dependent on the common law or statute but instead has an independent existence. *People v. D.K.B.,* 843 P.2d 1326, 1331 (Colo.1993). A vested right "must consist of more than a mere expectation based on the anticipation of the continuance of a legal status, and in the usual case, no person has a vested right in any rule of law entitling that person to insist it shall

remain unchanged for his or her future benefit." *Nye v. Indus. Claim Appeals Office, supra,* 883 P.2d at 609.

There is no constitutionally protected property right in workers' compensation benefits. Such benefits are created by statute and exist only to the extent provided by the General Assembly. *See Nye v. Indus. Claim Appeals Office, supra; see also Whiteside v. Smith,* 67 P.3d 1240 (Colo.2003).

A claimant's right to receive workers' compensation benefits does not become vested until entry of an award. *See Wood v. Beatrice Foods Co.,* 813 P.2d 821 (Colo.App. 1991).

Here, McBride's right to receive PPD benefits directly was dependent on statute, and thus was not vested. Moreover, McBride's award of PPD benefits could not have become vested until September 26, 2001, when Fast Engineering filed a final admission of liability. Because this date was some four months after the effective date of the amendment to § 8–42–124(6), McBride did not have a vested right on this basis as well.

Accordingly, we conclude that McBride does not have a vested right to receive PPD benefits directly and that the child support attachment liens apply to benefits for injuries that occurred before the effective date of the statutory amendment.

### D. New Obligation, Duty, or Disability

Next, we agree with Fast Engineering that the amended statute does not create a new obligation, impose a new duty, or attach a new disability with respect to McBride's workers' compensation PPD benefits.

Application of a statute is not rendered retrospective "merely because the facts upon which it operates occurred before adoption of the statute." *See City of Greenwood Village v. Petitioners for Proposed City of Centennial,* 3 P.3d 427, 445 (Colo.2000); *see Vetten v. Indus. Claim Appeals Office,* 986 P.2d 983 (Colo.App.1999).

In *Nye v. Industrial Claim Appeals Office, supra,* a division of this court held that an amendment to the Workers' Compensation Act could apply retroactively to allow the employer to offset a claimant's permanent total disability benefits arising from an injury that predated the amendment by one-half the amount of the claimant's Social Security retirement benefits and by the amount of the claimant's city pension. The division determined that this statutory amendment did not "purport to modify, reduce, or otherwise affect claimant's entitlement to retirement benefits, whether vested or not." *Nye v. Indus. Claim Appeals Office, supra,* 883 P.2d at 610. Similarly, here, McBride's right to receive the same amount of PPD benefits has not been impaired, even though fifty-five percent of that amount has been sent directly to CFSR pursuant to the child support attachment lien.

### E. Procedural v. Remedial Change

Finally, we conclude that § 8–42–124(6) as amended effected a change that is procedural or remedial.

A statute is remedial if it does not create, eliminate, or modify vested rights or liabilities. *Colo. Dep't of Soc. Servs. v. Smith, Harst & Assocs., Inc.,* 803 P.2d 964 (Colo. 1991). In *Smith, Harst,* the supreme court held that a statutory amendment was remedial in nature when it provided an alternative remedy for overpayment due to omission, error, fraud, or defalcation of trust funds maintained by nursing homes for the patients' personal needs accounts. The court noted that nursing homes have always had a fiduciary duty to maintain the trust accounts for the patients and that the statutory amendment "merely created a less drastic administrative remedy for an existing obligation." *Colo. Dep't of Soc. Servs. v. Smith, Harst & Assocs., Inc., supra,* 803 P.2d at 967.

Similarly, here, the statutory amendment provided a new administrative remedy to satisfy McBride's preexisting child support obligation. *See also Vetten v. Indus. Claim Appeals Office, supra* (application of remedial statute of limitation to petition to reopen an existing claim does not violate the prohibition against retrospective legislation); *cf. Lobato v. Indus. Claim Appeals Office, supra* (statute establishing time limit for claimant to file a notice and proposal to select a DIME physician must be applied prospectively; otherwise it would foreclose a claimant from proceeding with an active and ongoing claim for relief).

Accordingly, we conclude that the amendment to § 8–42–124(6) was not retrospective and that the Panel erred in concluding otherwise.

### F. Reliance on Interpretive Bulletin

We also conclude that the Panel erred in relying on an interpretive bulletin issued by the Director of the Division of Workers' Compensation on February 20, 2002, which stated that it "is the position of the Colorado Division of Child Support Enforcement that the new law affects only claimants whose *date of injury* occurred on or after May 31, 2001" (emphasis in original). While courts give deference to the interpretation of a statute by an agency charged with its administration, they need not defer to an agency's statutory interpretation when the statute can be applied as written or when the agency's interpretation misapplies or misconstrues the law. *See El Paso County Bd. of Equalization v. Craddock,* 850 P.2d 702 (Colo.1993).

Therefore, we hold that the amendment of § 8–42–124(6) permitting garnishment of PPD benefits could be applied in this instance without violating the constitutional prohibition against retrospective legislation.

### III. Overcoming DIME Impairment Rating

■■■ Fast Engineering next contends that the ALJ erred in determining that McBride had overcome the DIME impairment rating. We disagree.

A DIME physician's finding concerning a claimant's impairment rating is binding on the parties unless overcome by clear and convincing evidence. Section 8–42–107(8)(c), C.R.S.2003; *Whiteside v. Smith, supra.* Whether the DIME physician's rating has been overcome is a question of fact for determination by the ALJ. *Mosley v. Indus. Claim Appeals Office,* 78 P.3d 1150 (Colo. App.2003).

Clear and convincing evidence is evidence demonstrating it is "highly probable" the DIME physician's rating is incorrect. Such evidence must be unmistakable and free from serious or substantial doubt. *Leming v. Indus. Claim Appeals Office,* 62 P.3d 1015 (Colo.App.2002).

Pursuant to an independent medical evaluation (IME) conducted after the treating physician's evaluation and before the DIME, McBride received a thirteen percent impairment rating for his lumbar condition based in part upon lumbar range of motion measurement worksheets. The physician performing the IME did not recall at the time of his examination that he had treated McBride for a prior low back injury in 1991 for which McBride received an impairment rating of seven percent. The medical records also revealed that McBride experienced a low back problem in 1996, following which he was released to full duty without restrictions and resumed work in the heavy category.

Based upon McBride's medical history, the DIME physician refused to rate his back injury. The ALJ found that the refusal to rate McBride's lumbar condition improperly deviated from the requirements of the American Medical Association Guides to the Evaluation of Permanent Impairment (rev.3d ed. 1990)(AMA Guides), which mandated that range of motion measurements be taken for McBride's lumbar condition. The ALJ further determined that the IME physician's lumbar rating of thirteen percent was correct and that it should be apportioned to take into account the 1991 low back rating of seven percent.

Fast Engineering asserts that the IME physician's range of motion measurements and rating do not constitute clear and convincing evidence sufficient to overcome the impairment rating reached by the DIME because the IME physician retracted his lumbar rating in a later deposition after he was reminded of McBride's previous medical history. Fast Engineering also points to the lack of any lumbar rating in the treating physician's report and the physician's finding that McBride had full lumbar range of motion.

However, the ALJ noted that the treating physician included no worksheets or calculations in his report to document McBride's full range of motion. The ALJ also observed that McBride's prior lumbar impairment rating was for a specific disorder of the low back and that a functional capacity examination in 1993 indicated that McBride had no

residual limitations related to the lower back. McBride's return to full duty without permanent impairment or restrictions following his back injury in 1996 and his resumption of duties falling within the heavy demand work category support an inference that his prior conditions either resolved or did not interfere with his work performance. In contrast, McBride's medical records following his 2000 injury reflected a consistent and persistent loss of lumbar range of motion.

Fast Engineering does not specifically dispute the ALJ's finding that the AMA Guides require a physician to measure lumbar range of motion if a lumbar injury has been sustained. Nor does Fast Engineering specifically contest the ALJ's finding that McBride's 2000 accident caused a lumbar injury. Under these circumstances, we cannot conclude as a matter of law that the ALJ erred in determining that McBride had overcome the DIME rating by clear and convincing evidence.

### IV. Benefits After MMI

■ Finally, contrary to McBride's contention, the Panel properly determined that the benefits he received after he reached MMI were temporary disability benefits rather than PPD benefits. Accordingly, the ALJ properly allowed Fast Engineering to take credit for the portion of those benefits that it paid to the CFSR.

Dep't of Labor & Employment Rule IV(G)(1), 7 Code Colo. Regs. 1101–3, requires that an employer continue TTD benefits while awaiting the completion of the DIME process and the assignment of an impairment rating. *See also Monfort Transp. v. Indus. Claim Appeals Office*, 942 P.2d 1358 (Colo.App.1997)(insurer may not suspend temporary disability benefits even when a claimant reaches MMI if the insurer has not yet admitted or denied liability for permanent disability benefits). Further, Rule IV(G)(2) provides that an insurer "shall receive credit against permanent disability benefits for any temporary disability benefits paid beyond the date of maximum medical improvement."

Here, Fast Engineering paid TTD benefits after MMI because it lacked a legal basis to terminate those benefits under the pertinent statutes and administrative rules. We agree with the Panel that it would be unreasonable and unfair to require Fast Engineering to make TTD payments to McBride and the CFSR to comply with the rules and the administrative lien, but retroactively treat the same payments as PPD benefits for purposes of determining the applicability of § 8–42–124(6) and Fast Engineering's right to an offset. Thus, we conclude that the ALJ properly permitted Fast Engineering to claim a full offset under Rule IV(G)(2) for the TTD payments it made after McBride's date of MMI.

The order of the Panel is set aside to the extent it determined that the amended § 8–42–124(6) could not be applied retroactively here. In all other respects, the order is affirmed.

Judge MARQUEZ and Judge WEBB concur.