**PORTOFINO CORPORATION,**
**Petitioner–Appellant,**

v.

**BOARD OF ASSESSMENT APPEALS,**
**State of Colorado, and Board of County**
**Commissioners of Arapahoe County,**
**Colorado, Respondents–Appellees.**

**No. 90CA0520.**

Colorado Court of Appeals,
Div. V.

Aug. 29, 1991.

Rehearing Denied Oct. 10, 1991.

William A. McLain, P.C., William A. McLain, Silverman & Riley, William S. Silverman, McKenna & Cuneo, Terry L. Cook, Denver, for petitioner-appellant.

Peter Lawrence Vana III, County Atty., Richard F. Mutzebaugh, Sp. Asst. County Atty., Littleton, Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Denver, for respondents-appellees.

Opinion by Judge JONES.

Petitioner, Portofino Corporation, appeals the order of the Colorado State Board of Assessment Appeals (Board) denying its petition for refund of taxes for the 1988 tax year. Petitioner's sole contention on appeal is that the Board erred in determining that Colorado's statutory tax abatement or refund provisions, as amended in 1988, were not available to it for the purpose of challenging an allegedly excessive valuation of its Arapahoe County property because petitioner had failed to utilize the protest and adjustment provisions of Colo. Sess.Laws 1988, ch. 269, § 39-5-122 at 1300-1301. We agree with petitioner and reverse the Board's order.

Petitioner owns certain real property located in Arapahoe County, Colorado. As a result of its failure to utilize in a timely manner the protest and adjustment procedures provided in § 39-5-122, petitioner filed an abatement or refund petition with the Arapahoe County Board of Commissioners to seek redress for what it considered an excessive valuation in 1988. It requested a refund of taxes because "the assessor's valuation of the subject property was so excessive as to be erroneous."

The Board of Commissioners concluded that it lacked jurisdiction to hear the matter because the petition sought abatement or refund predicated on overvaluation and petitioner had failed to follow the statutory protest and adjustment procedures.

The Board reached a similar result and concluded that petitioner's appeal "does not involve an erroneous assessment or illegally levied tax; but rather, is that of valuation that was capable of adjustment through the administrative remedies as set forth in [§ 39-5-122]."

██ Protests concerning the valuation of taxable real property are regulated under § 39-5-122, and a taxpayer who is of the opinion that his property has been valued too high must protest within the time prescribed by that statute. See Amoco Production Co. v. Board of Assessment Appeals, 770 P.2d 1207 (Colo.1989); Bea Kay Real Estate Corp. v. Aragon, 782 P.2d 837 (Colo.App.1989).

In contrast to § 39-5-122, which specifically sets forth a procedure for seeking to correct perceived assessment overvaluations, Colo.Sess.Laws, ch. 268, § 39-10-114 at 1290-1292 permitted a taxpayer to recoup taxes which had been levied erroneously or illegally because of erroneous valuation for assessment, irregularity in levying, or clerical error.

In 1989, our Supreme Court addressed the relationship between § 39-5-122 and § 39-10-114, as they existed prior to the 1988 amendments, and concluded that a taxpayer who has failed to make a timely protest under § 39-5-122 may, only under certain limited circumstances, seek an abatement or a refund under § 39-10-114. Aurora Plaza & Conference Center, Ltd. v. Board of Assessment Appeals, 770 P.2d 1204 (Colo.1989); see Coquina Oil Corp. v. Larimer County Board of Equalization, 770 P.2d 1196 (Colo.1989); see also Amoco Production Co. v. Board of Assessment Appeals, 770 P.2d 1207 (Colo.1989).

In Aurora Plaza, the court stated that a taxpayer may seek a refund or abatement under § 39-10-114 for claims typically remedied under § 39-5-122 under the following circumstances:

"[F]irst, when the taxpayer does not learn of an assessment increase until after the time to protest under section 39-5-122 has passed, see Modular Communities, Inc. v. McNight, 191 Colo. 101, 550 P.2d 866 (1976); second, when the

taxpayer is denied an opportunity to protest because the tax was increased by someone other than the original assessor after the time to protest under section 39–5–122 has passed, *see Lamm v. Barber,* 192 Colo. 511, 565 P.2d 538 (1977); and third, when another similarly situated taxpayer follows the protest procedure of section 39–5–122 and obtains a final determination that the assessment is partially illegal, *see Board of Assessment Appeals v. Benbrook,* 735 P.2d 860 (Colo.1987)."

It is important to note, however, that in *Aurora Plaza, Coquina Oil,* and *Amoco Production Co.,* the court addressed § 39–10–114 as it existed prior to its amendment in 1988.

In 1988, the General Assembly amended § 39–10–114(1)(a)(I)(A) to provide as follows:

"If taxes have been levied erroneously or illegally, whether due to *erroneous valuation for assessment,* irregularity in levying, or clerical error, the treasurer shall report the amount thereof to the board of county commissioners.... However, EXCEPT AS OTHERWISE PROVIDED IN THIS SUB–SUBPARAGRAPH (A), in no case shall an abatement or refund of taxes be made more than six years after the taxes were due. NO ABATEMENT OR REFUND OF TAXES BASED UPON THE GROUND OF *ERRORS IN VALUATION* SHALL BE MADE FOR TAXES LEVIED PRIOR TO JANUARY 1, 1988; EXCEPT THAT THIS PROVISION SHALL NOT APPLY TO ANY VALUATION WHICH IS THE SUBJECT OF AN APPEAL MADE PURSUANT TO SECTION 39–8–108 WHICH, ON THE EFFECTIVE DATE OF THIS SUB–SUBPARAGRAPH (A), IS PENDING OR UPON WHICH A FINAL ORDER OR JUDGMENT HAS BEEN ISSUED. ON OR AFTER JANUARY 1, 1990, IN NO CASE SHALL AN ABATEMENT OR REFUND OF TAXES BE MADE UNLESS A PETITION FOR ABATEMENT OR REFUND IS FILED WITHIN ONE YEAR OF THE DATE UPON WHICH THE TAXES WERE DUE OR WITHIN ONE YEAR OF THE ISSUANCE OF A FINAL ORDER OR JUDGMENT IN AN APPEAL FILED PURSUANT TO SECTION 39–8–108, WHICHEVER IS LATER." Colo.Sess.Laws 1988, ch. 268 at 1290–91. (emphasis added)

■ If the language of a statute is plain and its meaning clear, it must be applied as written. *In re Estate of David,* 776 P.2d 813 (Colo.1989). And under such circumstances, resort to legislative history in order to determine the intent of the General Assembly is not only unnecessary, but inappropriate. *See Lassner v. Civil Service Commission,* 177 Colo. 257, 493 P.2d 1087 (1972); *Elliott Electric Supply Co., Inc. v. Adolfson & Peterson, Inc.,* 765 P.2d 1079 (Colo.App.1988).

Based on these principles, a division of this court in *5050 S. Broadway Corp. v. Arapahoe County Board of Commissioners,* 815 P.2d 966 (*cert. granted* August 19, 1991), held that the 1988 amendment fails to state any new or different grounds upon which a taxpayer may seek an abatement or a refund and that, because it fails to enumerate "overvaluation" as a basis for abatement or refund, it "does not enlarge the prior basis for an appeal."

However, we note the action of the 58th General Assembly in promulgating Senate Bill 91–231 in which it concedes that the 56th General Assembly did not use sufficiently precise language in amending § 39–10–114 to permit the true legislative intent of the 56th General Assembly to be discerned therefrom. *See* S.B. 91–231, 58th Gen. Ass., 1st Session, 1991. This extraordinary measure by the 58th General Assembly requires our consideration even though, generally, the legal process would prohibit the judicial branch from resorting to interpretive analysis of otherwise straightforward statutory enactments.

■ While subsequent legislative declarations concerning the intent of an earlier statute are not controlling, they are entitled to significant weight. *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); *Martin v. Johnson,* 708 P.2d 121 (Colo.1985); *see* 2A N. Singer,

Sutherland Statutory Construction § 49.11 (4th ed. 1984); Annot., *Supreme Court's Views on Weight to be Accorded to Pronouncements of Legislature, or Members of Legislature, Respecting Meaning or Intent of Previously Enacted Statute*, 56 L.Ed.2d (1979).

Here, in the 1991 amendment to § 39–10–114, the General Assembly, in the portion of S.B. 91–231 titled, "Legislative declaration," states that the intent of the 1988 amendment was to extend "to any taxpayer the right to petition for abatement or refund of property taxes levied erroneously or illegally due to an *overvaluation* of such taxpayer's property ... [and that] *said right has existed since the enactment of [the 1988 amendment] and shall continue to exist.*" (emphasis added) Also, the 1991 amendment to § 39–10–114(1)(a)(I)(A) specifically includes "overvaluation" as a basis upon which a taxpayer may seek relief under the statute. *See* Colo.Sess.Laws 1991, ch. 309 at 1963.

Furthermore, the 58th General Assembly, noting the rubric of the *5050 S. Broadway* case, specifically stated:

"The general assembly ... declares that Senate Bill 91–231 was enacted by the 58th general assembly in its first regular session with the intent of clarifying that ... [the] interpretation by the Colorado court of appeals [in the *5050 S. Broadway* case] was incorrect...."

Under these circumstances, we conclude that, in amending § 39–10–114 in 1988, the General Assembly intended to provide taxpayers the opportunity to utilize the abatement and refund provisions for the purpose of challenging an overvaluation. Thus, the Board erred in determining that petitioner could not utilize those provisions because it had failed to protest pursuant to § 39–5–122.

The order is reversed, and the cause is remanded for further proceedings.

NEY and DAVIDSON, JJ., concur.