**SHELL WESTERN E&P, INC., Petitioner,**

v.

**DOLORES COUNTY BOARD OF COMMISSIONERS, and Board of Assessment Appeals, State of Colorado, Respondents.**

No. 96SC150.

Supreme Court of Colorado, En Banc.

Nov. 17, 1997.

As Modified on Denial of Rehearing Dec. 15, 1997.

Holland & Hart LLP, Alan Poe, Elizabeth A. Phelan, Englewood, for Petitioner.

Dyer & Dilts, P.C., Nicki L. Green, Guy B. Dyer, Jr., Nancy Agro, Cortez, Groves & Price, John W. Groves, David A. Price, Grand Junction, for Respondent Dolores County Board of Commissioners.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Merrill Shields, Deputy Attorney General, Richard Djokic, First Assistant Attorney General, Eugene C. Cavaliere, Senior Assistant Attorney General, Regulatory Law Section, Denver, for Respondent Board of Assessment Appeals.

Justice SCOTT delivered the Opinion of the Court.

The principal question presented by this case is whether the owner of gas wells subject to an ad valorem tax based solely on mineral production value, which owner has failed to give the county assessor the notice of production mandated by statute, may avoid its tax obligations by asserting a statute of limitations defense against the county.[1]

---

1. Our order granting certiorari set forth the following issues for briefing and argument:

(1) Whether the court of appeals properly applied the doctrines of equitable tolling and equitable estoppel to avoid the six-year statute of limitations contained in § 39–10–101(2)(b)(I), 16B C.R.S. (1995 Supp.), on the assessment of *ad valorem* taxes.

(2) Whether the court of appeals rendered § 39–10–101(2)(d), 16B C.R.S. (1994), retrospective in its operation by imposing interest on delinquent taxes from the date taxes could have been assessed for years prior to 1992, when prior to 1992 the statute provided for interest only from the date of actual assessment.

We hold that the running of the statute of limitations is equitably tolled and the tax obligation may not be avoided.

We therefore affirm the court of appeals; however, we do so on grounds different from its rationale. We conclude that the statute of limitations provided by section 39–10–101(2)(b)(I), 11 C.R.S. (1997), was equitably tolled due to the taxpayer's failure to timely file any schedules reporting mineral production to the county assessor. In addition, because the schedules were untimely filed and assessments made after the effective date of amendments to the delinquent interest calculation of section 39–10–101(2)(d), 11 C.R.S. (1997), the application of that statute in this case is not retrospective or unlawfully retroactive.

## I.

### A.

The facts below are derived from the "Agreed Statement of Facts" filed in the proceedings before the Dolores County Board of Commissioners (County Board) and the Board of Assessment Appeals (BAA). Petitioner, Shell Western E & P, Inc. (SWEPI), operates and owns an interest in the McElmo Dome Carbon Dioxide Production Unit (Unit), which encompasses oil and gas leaseholds in both Montezuma County and Dolores County. All of the producing wells, production equipment, and facilities related to the Unit, however, are located in Montezuma County. For tax years 1985 through 1990, SWEPI filed Oil and Gas Real and Personal Property Declaration Schedules (Tax Declaration Schedules) with the Montezuma County Assessor pursuant to section 39–7–101, 11 C.R.S. (1997).

While a portion of the carbon dioxide ($CO_2$) production from the Unit should have been reported to Dolores County for each of the tax years 1985 through 1990, SWEPI did not allocate any $CO_2$ production to, nor did it file notice of such production with, the Dolores County Assessor. SWEPI did, however, report 100% of its $CO_2$ production from the Unit in its filings with Montezuma County and did pay all taxes assessed by Montezuma

County for the tax years 1985 to 1990. For purposes of this case, all parties agree that failure to file the schedules with, or pay taxes to, Dolores County from 1985 to 1990 was not attributable to "willful" or "fraudulent" conduct and that SWEPI did not act with the intent to evade payment of any tax. It was not until December 1992 that SWEPI filed Tax Declaration Schedules with the Dolores County Assessor regarding its leasehold interest and $CO_2$ production attributable to Dolores County.

On December 24, 1992, pursuant to section 39–10–101(2)(a)(I), 11 C.R.S. (1997), the Dolores County Treasurer issued a tax notice (assessment) for tax years 1985 through 1990, making the first assessment on SWEPI's property payable to Dolores County.[2] On June 7, 1993, SWEPI filed petitions for abatement of taxes with the County Board. SWEPI later withdrew its petitions for abatement of taxes for tax years 1986 through 1990 concerning the taxes assessed and the delinquent interest on the taxes assessed on December 24, 1992, through the date of payment. SWEPI did not, however, withdraw its abatement petition for tax year 1985 or its request for abatement of interest that accrued prior to December 24, 1992. On August 31, 1993, SWEPI paid the taxes due to Dolores County for tax years 1986 through 1990 as well as the interest due on such tax from the period December 24, 1992 through the date of payment.[3] In effect, therefore, the issues before us relate only to the ad valorem taxes assessed and delinquent interest calculated for $CO_2$ production in 1985.

### B.

After an evidentiary hearing, on December 6, 1993, the County Board issued its order on SWEPI's petition for abatement. In its order, the County Board denied SWEPI's request for abatement of its tax obligation. The County Board expressly found that SWEPI did not file the Tax Declaration Schedules or operating statements that were required to be filed under section 39–7–101, 11 C.R.S. (1997), until 1992. The County

---

**2.** The parties agree that the amount of tax assessed for each of the tax years 1985 through 1990 is accurate.

**3.** The total amount SWEPI paid to Dolores County was $1,316,748.41.

Board further found that SWEPI had "an affirmative duty" to file the Tax Declaration Schedules required under section 39–7–101 with the Dolores County Assessor and that SWEPI's "own acts or omissions contributed to the running of the statute, if in fact the same was determined to have run." The County Board concluded SWEPI was thus "estopped from raising the statute of limitations as a defense."

With regard to delinquent interest, the County Board found that taxes and interest were assessed in December 1992, after section 39–10–101(2)(d), which altered the method of calculating interest, became effective. Calculating delinquent interest from 1986, the date that the omitted taxes were originally due, the County Board concluded, as a matter of law, that Dolores County had a right to interest that accrued from 1986 and not from December 1992, when the additional assessment was made. The County Board ruled that such a result did not constitute a retroactive application of section 39–10–101(2). Therefore, the County Board denied the petition for abatement.

SWEPI appealed the County Board's order to the BAA. On September 9, 1994, the BAA denied SWEPI's petition for abatement. The BAA reasoned that, under the doctrine of equitable estoppel, SWEPI could not assert the statute of limitations in section 39–10–101(2)(b) because SWEPI failed to fulfill its statutory duty to file a property declaration schedule with the Dolores County Assessor pursuant to section 39–7–101, 11 C.R.S. (1997). The BAA also ruled that the "Dolores County Treasurer's calculation of interest on the additional assessments for the tax years 1986 through 1990 was not a retrospective application of the amendments to section 39–10–101(2)." The BAA's decision on retroactivity was premised on two rationales: (1) interest is a part of the remedy imposed by the General Assembly and statutes which create remedies do not come within the prohibition against retrospective legislation; and (2) the additional assessments were not made until after the amendments to section 39–10–101(2) became effective on April 10, 1992. After the BAA issued its ruling upholding the order of the County Board, SWEPI sought review by the court of appeals.

The court of appeals affirmed the BAA's order and held that the Agreed Statement of Facts was sufficient to support the BAA's conclusion that SWEPI's failure to file the Tax Declaration Schedules prejudiced the county such that SWEPI could not claim the protections contemplated by the statute of limitations. *See Shell Western E & P, Inc. v. Board of County Comm'rs*, 923 P.2d 251, 254 (Colo.App.1995). Finding no abuse of discretion, the court of appeals held that the use of section 39–10–101(2)(d), as amended and in effect after April 10, 1992, was appropriate and that delinquent interest should begin accruing "at the time SWEPI's obligation to pay taxes ... first became due," concluding that such a calculation was not an unconstitutional or retrospective application of the statute. *Id.* at 254–55. SWEPI then filed its petition for review before us.

## II.

### A.

Under section 39–7–101, 11 C.R.S. (1997), every owner or operator of any oil or gas leasehold or lands within the state must file a statement with the county assessor providing information for valuation and assessment of ad valorem tax obligations. Section 39–7–107, 11 C.R.S. (1997), provides that whenever any oil and gas leaseholds or lands are situated partly in one county and partly in another, the person obligated to file the statement under section 39–7–101 shall allocate the production value between such counties in proportion to surface acreage. The county assessor has the responsibility of using the information provided to compile a tax list and related warrants, and must transmit that information to the county treasurer.

Pursuant to section 39–7–101, the treasurer then collects the taxes. Section 39–10–101(2)(a) authorizes the treasurer to make additional assessments if, after having received the tax list and warrant, the treasurer discovers taxable property omitted from the tax list and warrant for the current year or for any prior year that has not been valued for assessment. Any such additional assessment is valid for all purposes, just as if it had been performed by the assessor.

However, this taxing authority is not unrestricted. Section 39–10–101(2)(b), 11

C.R.S. (1997), a statute of limitations, provides:

> The taxes for any period, together with interest thereon, imposed by this section shall not be assessed, nor shall any lien be filed or distraint warrant issued or suit for collection be instituted or any other action to collect the same be commenced, more than six years after the date on which the tax was or is payable. Except as otherwise provided in paragraph (d) of this subsection (2), interest shall not be charged prior to the date on which additional assessment is made.

(Emphasis added.) "Statutes of limitation are enacted to promote justice, discourage unnecessary delay, and forestall prosecution of stale claims." *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094, 1096 (Colo.1996). Although we noted in *Kuhn v. State,* 897 P.2d 792, 797 (Colo.1995), that tax provisions have generally been viewed as technical laws that are not subject to equitable principles,[4] under certain circumstances, "equity may require a tolling of the statutory period where flexibility is required to accomplish the goals of justice." *Dean Witter,* 911 P.2d at 1096 (citing *Garrett v. Arrowhead Improvement Ass'n,* 826 P.2d 850, 853 (Colo.1992)). When a rigid application of the statute of limitations leads to an unjust result, courts may properly fashion an equitable exception to the limitations period that may be asserted against a governmental agency as well as against private persons. *See Jafay v. Board of County Comm'rs,* 848 P.2d 892, 903 (Colo. 1993).

▪ One equitable exception is that where a duty to furnish information is imposed by statute, the failure to provide the required information tolls the statute of limitations. *See Garrett,* 826 P.2d at 854. "[I]t has been held that a party will not be heard to plead the statute of limitations if he himself is not in compliance with his statutory duty." *Strader v. Beneficial Fin. Co.,* 191 Colo. 206, 211–12, 551 P.2d 720, 724 (1976); *see also Alfred v. Esser,* 91 Colo. 466, 471–72, 15 P.2d 714, 715 (1932) (where statutes con-

template "that some sort of notice be given" and none is given to the holder of a right, "it would be unjust to hold the statute bars a recovery"); *Berkey v. County Commr's,* 48 Colo. 104, 117, 110 P. 197, 201–02 (1910) (a party "may not set up and rely upon the statute of limitations, until he first shows that he has complied with the terms of the statute, and is himself within the law"). Hence, equity will toll a statute of limitations if a party fails to make a legally required disclosure and the other party is prejudiced as a result. *See Garrett,* 826 P.2d at 855.

▪ Similarly, a court may resort to the doctrine of equitable estoppel when application of a statute of limitations will lead to an unjust result. We have held that where a party's acts or omissions contribute to the running of a statute of limitations, the doctrine of equitable estoppel may bar that party's raising the limitations statute as a defense. *See Strader,* 191 Colo. at 211–12, 551 P.2d at 724; *see also Di Salle v. Giggal,* 128 Colo. 208, 213, 261 P.2d 499, 501 (1953); *C.W. Kettering Mercantile Co. v. Fox,* 77 Colo. 90, 92, 234 P. 464, 465 (1925). Where a defendant's wrongful actions have been the cause of a plaintiff's failure to institute a timely action, the defendant may be estopped from relying upon the resulting delay as a defense to the plaintiff's claim. *See Duell v. United Bank of Pueblo,* 892 P.2d 336, 341 (Colo.App. 1994).

Turning to the facts of this case, we must determine whether the court of appeals properly applied equitable principles in tolling the six-year statute of limitations thereby permitting Dolores County to enforce SWEPI's tax obligation for tax year 1985. SWEPI argues that the tax laws are not subject to equitable principles and that Dolores County exceeded its statutory authority in attempting to impose an additional assessment.

While we agree with the court of appeals' determination that "[e]quity will toll the running of the statute of limitations," *Shell Western,* 923 P.2d at 253, and that the six-year statute of limitations should not prevent Dolores County from obtaining payment of taxes for tax year 1985, we do not rely upon

---

**4.** Similar to our holding in *Kuhn,* the United States Supreme Court recently held that courts cannot toll, for nonstatutory equitable reasons, the statutory time (and related amount) limita-

tions for filing federal tax refund claims. *See United States v. Brockamp,* —— U.S. ——, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997).

the doctrine of equitable estoppel for our determination. Instead, we affirm the judgment below on the grounds that the doctrine of equitable tolling will not permit a county taxpayer who has failed to file the Tax Declaration Schedules required by statute to benefit from the assessors' lack of knowledge that results from such failure by asserting the statute of limitations as a defense.

## B.

The BAA found that because section 39–7–102 provides that taxes are to be assessed based on information supplied by the owner or operator of a leasehold pursuant to section 39–7–101(1), the county assessor reasonably relied on SWEPI's failure to file required declaration schedules in determining that no production was reportable in Dolores County. Based on that reliance, the BAA found that SWEPI was equitably estopped from asserting the statute of limitations as a defense to the county treasurer's additional assessment for tax year 1985. The court of appeals upheld the BAA's decision to apply the doctrine of equitable estoppel to bar SWEPI's statute of limitations defense. *See Shell Western,* 923 P.2d at 254. While we agree with SWEPI that equitable estoppel is not applicable, we conclude the running of the statute of limitations was properly tolled.

Traditionally, two doctrines have been employed to stay the running of statutes of limitations. While both are grounded in equity, they are analytically distinct.

The first, often referred to as the equitable estoppel doctrine, would apply if the following elements were established: (1) SWEPI must have known the facts; (2) SWEPI must have intended that its conduct be acted on or must have acted in a manner such that the county treasurer had a right to believe that SWEPI's conduct was so intended; (3) the county treasurer must have been ignorant of the true facts; and (4) the county treasurer must have reasonably relied upon SWEPI's conduct to the county's injury. *See Dove v. Delgado,* 808 P.2d 1270, 1275 (Colo.1991); *Department of Health v. Donahue,* 690 P.2d 243, 247 (Colo.1984).

■ We agree with the court of appeals that "it would be manifestly unjust for SWEPI to assert the statute of limitations as a defense" where SWEPI's failure to file declaration schedules to give the assessor notice of its $CO_2$ production "directly contributed to the running of the statute of limitations." *Shell Western,* 923 P.2d at 254. Nonetheless, we disapprove of the court of appeals' reliance upon the estoppel doctrine because, in this case, all the necessary elements cannot be shown. Even assuming that the first element is met—that SWEPI did know the facts—the Agreed Statement of Facts compels us to conclude that SWEPI could *not* have intended for the Dolores County Treasurer to act on its failure to file the required Tax Declaration Schedules, nor could the county treasurer have had a right to believe that SWEPI's failure to act was so intended. To the contrary, the Agreed Statement of Facts provides that SWEPI's "failure to file copies of the schedules with the Dolores County Assessor for tax years 1985 through 1990, *were not attributable to willful actions or* fraudulent actions *with intent to evade tax.*" (Emphasis added.) Thus, equitable estoppel does not apply.

■ The second doctrine, equitable tolling, is generally employed where the person seeking to assert the statute of limitations defense has failed to provide notice or furnish information as required by statute. Here, SWEPI did not allocate any portion of the $CO_2$ production to Dolores County nor did it file copies of the Tax Declaration Schedules with the Dolores County Assessor as required by statute. *See* § 39–7–101, 11 C.R.S. (1997). It is undisputed that SWEPI had a statutory duty to allocate a portion of the $CO_2$ production to Dolores County and to file tax schedules disclosing such information to the county assessor. SWEPI's conduct, we conclude, prevented the county assessor from assessing SWEPI's tax liability in a timely manner. Because SWEPI should not benefit from its failure to meet its statutory duty,[5] we conclude the BAA and court of appeals properly rejected SWEPI's statute

---

**5.** The record does not reflect whether SWEPI sought a refund of the erroneous payment to Montezuma County. At oral argument, SWEPI's counsel was unable to say with certainty whether the company had filed for a refund, although he noted that the statute of limitations applicable to refunds is two years. *See* § 39–10–114, 11

of limitations argument.[6] However, we do so by invoking the doctrine of equitable tolling.

### C.

In its briefs and argument before us, SWEPI raises two cases, *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094 (Colo. 1996), and *United States v. Brockamp*, —— U.S. ——, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), in support of its claim that Dolores County is not entitled to the taxes assessed. SWEPI's reliance upon these cases is misplaced.

In *Dean Witter*, Lawrence Hartman brought an action against Dean Witter Reynolds, Inc. for breach of contract and negligence in its handling of funds in a joint account Hartman had opened at Dean Witter. In the same action, Hartman also alleged that Norwest Bank Colorado Springs, NA, a third party, was also negligent. Hartman's claims were filed three years after Hartman successfully sued Norman Vaux II, his associate, for improperly removing funds from the joint account at Dean Witter. Dean Witter and Norwest asserted the statute of limitations as a defense. We concluded that the statute of limitations was not tolled because the actions of Dean Witter and Norwest did not in any way impede Hartman's ability to file suit against Dean Witter. *See Dean Witter*, 911 P.2d at 1097. We found the facts insufficient "to invoke equitable tolling of the statute of limitations" because they showed no fraudulent concealment and instead "show[ed] that Hartman was aware of the defendants' actions . . . well over six years before he filed suit." *Id.*

In contrast to *Dean Witter*, here the county assessor did not have any knowledge of the $CO_2$ production allocable to Dolores County, due to SWEPI's failure to file the Tax Declaration Schedules with the Dolores County Assessor. Even though SWEPI did not willfully or fraudulently conceal the Unit's $CO_2$ production from Dolores County's assessor, this does not alter the fact that the Dolores County Assessor was not aware of the $CO_2$ production subject to the county ad valorem tax. Thus, our holding in *Dean Witter* has no application here.

Similarly, in *Brockamp*, the Supreme Court concluded that Congress did not intend the "equitable tolling" doctrine to be applied for the *benefit* of taxpayers to stay the running of a federal statutory limitations period when pursuing an income tax refund claim. *See Brockamp*, —— U.S. at ——, 117 S.Ct. at 853. The Court observed that while ordinary limitations statutes use "fairly simple language, which one can often plausibly read as containing an implied 'equitable tolling' exception," the federal statute (section 6511)[7] is a "highly detailed technical [statute] that linguistically speaking, cannot easily be read as containing implicit exceptions." *Id.* at ——, 117 S.Ct. at 851. SWEPI's argument that *Brockamp* should govern the determination of this issue is misplaced because: (1) the Colorado statute at issue does not contain such detailed technical language and (2) the facts in *Brockamp* involved taxpayers seeking an income tax refund through an administrative claim for refund several years after the time period for doing so had ended. *Id.* at ——, 117 S.Ct. at 850. *Brockamp* is factually distinguishable, therefore, from cases involving an ad valorem tax.

Finally, and more significantly, *Brockamp* is distinguishable based on the statutes at issue. Examining the federal tax limitations statutes at issue in *Brockamp*, Justice Breyer, writing for a unanimous court, noted that section 6511 "sets forth its time limitations in unusually emphatic form," *id.* at ——, 117 S.Ct. at 851, and that the federal statutes identify several bases for tolling the statute, which the taxpayers did not meet. The applicable statutes also set forth procedures for "the Government's recovery of any such 'er-

---

C.R.S. (1997) (establishing two-year limitation period on petition for abatement or refund). Whether SWEPI took advantage of this provision in a timely manner or not, we view the existence of a mechanism to recover the overpayments as significant in assessing the equities involved in this case.

**6.** We also note, however, that even if SWEPI's failure to file schedules with Dolores County had

been fraudulent, the doctrine of equitable estoppel would not be necessary to overcome the statute of limitations claim. Section 39–10–101(2)(c) provides that in the case of fraudulent action, tax and interest may be assessed and collection may be commenced at any time.

**7.** 26 U.S.C. § 6511 (1986 & Supp.1997)

roneous' refund payment," *id.* at ——, 117 S.Ct. at 852. Despite its reliance upon *Brockamp,* SWEPI has not identified any provision in our law which is similar to those relied upon by the Supreme Court.

 The application of the doctrine of equitable tolling requires an inquiry into the circumstances of the delay that prompted the statute of limitations to be invoked. In *Dean Witter,* we declined to apply the equitable tolling doctrine to permit the plaintiff to file suit after the statute of limitations had expired because the facts did not demonstrate any fraudulent concealment by either institution. *See Dean Witter,* 911 P.2d at 1097. Neither of the defendants in *Dean Witter* acted in any way to impede the plaintiff from bringing an action against them. *See id.* Similarly, in *Sands v. New Age Family Partnership, Ltd.,* 897 P.2d 917, 922 (Colo.App. 1995), the court of appeals held that the trial court did not abuse its discretion by declining to apply the doctrine of equitable tolling because there was no allegation that defendant failed to disclose any required information, induced or encouraged plaintiffs to allow the statute of limitations to run, or otherwise prevented plaintiffs from filing a timely claim. *See also Sharp Bros. Contracting Co. v. Westvaco Corp.,* 878 P.2d 38, 44 (Colo.App. 1994) (rejecting equitable tolling where opposing party did not engage in any conduct which adversely affected the filing of defendant's claims); *Samples–Ehrlich v. Simon,* 876 P.2d 108, 110 (Colo.App.1994) (equitable tolling inapplicable absent evidence to demonstrate that defendant's conduct adversely affected the filing of plaintiff's claim); *Overheiser v. Safeway Stores, Inc.,* 814 P.2d 12, 13–14 (Colo.App.1991) (recognizing doctrine but holding it inapplicable to the facts).

 In contrast to the aforementioned cases, we conclude that here, application of the equitable tolling doctrine is appropriate because SWEPI's conduct did adversely affect Dolores County's ability to assess ad valorem taxes. Under the tolling doctrine, there is no requirement of fraud or bad faith; rather, it may be applied where a person fails to perform an act which was compelled by statute and that failure to act caused the delay that prejudiced the opposing party.

As such, we rely on the principle of equitable tolling for our decision here. Under *Garrett,* SWEPI's failure to fulfill its statutory duty of providing notice of its interest in the Unit and the necessary information to Dolores County to enable its public officials to assess the proper tax provided an equitable basis for tolling the statute of limitations. *See Garrett,* 826 P.2d at 854. If the declaration schedules had been timely filed so the tax could have been assessed in 1986 and if the county treasurer had not acted until December 1992, the statute of limitations would preclude collection. However, the tax was assessed in 1992, shortly after SWEPI filed the statutory declaration schedules, informing Dolores County of its interest in the production Unit.

All of the wells, production equipment, and facilities relating to the Unit are located in Montezuma County. However, as the BAA noted, the tax in question here is based upon $CO_2$ production, not on property. The Agreed Statement of Facts does not provide any basis to conclude, as SWEPI also argues, that the Dolores County Assessor had constructive or actual notice of the leasehold interest or the Unit's $CO_2$ production. In other words, we cannot ignore SWEPI's statutory duty to inform the county assessor of its taxable activities by timely filing its Tax Declaration Schedules with Dolores County nor will we excuse SWEPI from the tax consequences related to that duty by assuming that the county assessor knew or should have known of the $CO_2$ production based on SWEPI's other activities within the county. To hold otherwise would be tantamount to turning a dereliction of duty into a triumph.[8]

---

**8.** Some background on the foundations of our tax system is helpful in understanding our resolution of the issues before us. State, local, and federal governments rely heavily on self-reporting by taxpayers to determine the tax liability of both individuals and corporations. "[T]he success of our ... tax system is predicated on the honest and full disclosure of information by the millions of taxpayers who annually file their ... tax returns." Harry Graham Balter, *Tax Fraud and Evasion* § 1.01 (5th ed.1983). While taxpayers are generally free to structure their affairs in such a way as to minimize their tax liability, they are responsible for reporting on whatever activities they may undertake that result in tax liability.

## III.

The second issue we must decide under our grant of certiorari is whether the court of appeals rendered section 39–10–101(2)(d), 11 C.R.S. (1997), which provides that additional assessments are subject to delinquent interest, retrospective in its operation by imposing delinquent interest on taxes from the date the taxes could have been assessed through 1992, when prior to 1992 the statute provided for interest only from the date of actual assessment.[9]

SWEPI argues that the court of appeals' imposition of interest on the additional assessed taxes pursuant to section 39–10–101(2)(d) is a retroactive application of the statute because it directly operates on obligations that arose before the effective date of the statute. SWEPI urges that the law in effect prior to April 10, 1992, the effective date of section 39–10–101(2)(d), should be applied because it was controlling at the time SWEPI's taxes first became due. We do not agree.

### A.

 Article II, section 11 of the Colorado Constitution provides that no law retrospective in its operation shall be passed by the General Assembly.[10] It is well settled that an act violates this constitutional prohibition if it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, with respect to transactions or considerations already past. *See Ficarra v. Dep't of Regulatory Agencies,* 849 P.2d 6, 15 (Colo.1993); *Moore v. Chalmers–Galloway Live Stock Co.,* 90 Colo. 548,

554, 10 P.2d 950, 952 (1932). In *Ficarra,* 849 P.2d at 11, we discussed and distinguished prospective, retroactive, and retrospective legislation:

> Legislation is applied prospectively when it operates on transactions that occur after its effective date, and retroactively when it operates on transactions that have already occurred or rights and obligations that existed before its effective date. Often it is difficult absolutely to characterize a statute as either prospective or retroactive because even if a statute directly affects only transactions that occur after its effective date, it may indirectly, and not insignificantly, affect transactions that occurred before its effective date. In addition, although the retroactive application of a statute is generally disfavored by the common law, and by statute, the retroactive application of a civil statute is not necessarily unconstitutional. Otherwise stated, under our state constitution, some retroactively applied civil legislation is constitutional, and some is not, and it is helpful to mark this distinction by using the term *retrospective* to apply only to legislation whose retroactive effect violates the constitutional prohibition.

*Id.* (citations omitted). Ordinarily, whether a statute is retroactive and permissible or retrospective and unlawful is not an issue on review. In Colorado, legislation is presumed to have prospective effect unless the General Assembly expresses a contrary intent. *See Riley v. People,* 828 P.2d 254, 257 (Colo. 1992). However, having decided numerous cases concerning the presumption that statutes operate prospectively, "this court has never once held that only an express con-

Despite the inherent unpopularity of taxes, our system of tax collection relies upon the honesty and goodwill of citizens and residents. The obligation to pay taxes is in no sense elective, but in our voluntary assessment system taxpayers themselves are initially responsible for determining how much they owe.

American Bar Association, Commission on Taxpayer Compliance, Report and Recommendations 6 (1987).

It follows, then, that our tax collection system cannot tolerate the failure of a taxpayer to disclose and provide notice of all taxable activities fully and accurately, even in the absence of bad faith or willful refusal to make accurate disclosures. The taxpayer's role in disclosing taxable activity is no less significant in the context of ad

valorem taxation, and this is especially true when the taxpayer is the only source of information necessary to determine tax obligations. Under our taxing scheme, while an honest reporting mistake should not subject a taxpayer to the same sanctions as an intentional effort to deceive the taxing authorities, it cannot be rewarded.

**9.** SWEPI concedes that if the additional assessment for tax year 1985 is upheld, interest on that assessment is due for the period beginning December 24, 1992, through the date of payment.

**10.** Article II, section 11 of our constitution provides: "Ex post facto laws. No ex post facto law, nor law ... retrospective in its operation ... shall be passed by the general assembly."

trary declaration by the General Assembly is sufficient to overcome the presumption that statutes are prospective in operation." *Ficarra*, 849 P.2d at 14. In other words, for legislation to be given retroactive effect without being unconstitutional, it must be clearly the intent of the General Assembly to do so, but that intent need not be explicitly expressed in the legislation. *See Villa at Greeley, Inc. v. Hopper*, 917 P.2d 350, 355 (Colo. App.1996).

Section 39–10–101(2)(d) provides that delinquent interest on "[t]axes levied upon additional assessments . . . on oil and gas leaseholds and lands which had been previously omitted from the tax list ... [as a result of the taxpayer's failure to make the required disclosures] shall be calculated to accrue from the date the taxes were due...." In our view, this language plainly evinces an intention to change the calculation of interest on tax obligations that arose in the past and are subsequently discovered. Nonetheless, once it is determined that the legislature intended a retroactive effect, we must next decide whether the statute, as applied, violates the constitutional prohibition or is retrospective.

▮▮▮▮ Application of a statute is not rendered unlawful merely because the facts upon which it operates occurred before adoption of the statute. *See People v. D.K.B.*, 843 P.2d 1326, 1333 (Colo.1993); *Continental Title Co. v. District Court*, 645 P.2d 1310, 1314 (Colo.1982). Further, application of a statute to a subsisting claim for relief does not violate the prohibition of retrospective legislation where the statute effects a change that is only procedural or remedial in nature. *See Continental Title Co.*, 645 P.2d at 1315; *see also Kuhn v. State*, 924 P.2d 1053, 1057 (Colo.1996). This is true because the abolition of an old remedy or the substitution of a new one does not impair a vested right or impose a new duty, for there is no such thing as a vested right in remedies. *See Continental Title Co.*, 645 P.2d at 1315; *see also Moore*, 90 Colo. at 554–55, 10 P.2d at 952.

In pertinent part, section 39–10–101(2)(d), 11 C.R.S. (1997), provides:

*Taxes levied upon additional assessments* on mines and on oil and gas leaseholds and lands which had been previously omitted from the tax list and warrant due to the failure of an owner or operator of any mine or of any oil and gas leaseholds and lands to [provide the requisite information to the county assessor so that he may assess the proper tax] shall be subject to the delinquent interest provisions of section 39–10–104.5. *Delinquent interest shall be calculated to accrue from the date the taxes were due* pursuant to section 39–1–105 and section 39–6–106, 39–6–113, or 39–7–101.

(Emphasis added.) This section of the statute provides for interest on a delinquent payment of tax. Prior to the amendment of this provision in 1992, interest began accruing on the date the additional assessment was made. *See* ch. 323, § 39–10–101, 1992 Colo. Sess. Laws 2238, 2238–39. The interest provision provides a remedy to the county for the taxpayer's failure to timely pay an outstanding tax obligation.

▮▮▮▮ The distinction between substantive and remedial statutes lies in the fact that substantive statutes create, eliminate, or modify vested rights or liabilities, while procedural statutes relate only to remedies or modes of procedure to enforce such rights or liabilities. *See D.K.B.*, 843 P.2d at 1331; *see also Department of Soc. Servs. v. Smith, Harst & Assoc., Inc.*, 803 P.2d 964, 966 (Colo. 1991) ("Statutes are classified as remedial if they do not create, eliminate, or modify vested rights or liabilities."). A right is only vested when it is not dependent upon the common law or the statute under which it was acquired for its assertion, but has an independent existence. *See D.K.B.*, 843 P.2d at 1331. Statutes of limitation, for example, are remedial in nature. *See Woodmoor Improvement Ass'n v. Property Tax Adm'r*, 895 P.2d 1087, 1089 (Colo.App.1994).

### B.

▮▮▮▮ SWEPI argues that applying section 39–10–101(2)(d), as amended in 1992, to tax years and periods preceding the statute's effective date is retrospective or unconstitutionally retroactive.[11] To support its argu-

---

**11.** For purposes of this opinion, when we use the term retrospective, we mean "legislation whose retroactive effect violates the constitutional pro-

hibition" of art. II, sec. 11 of the Colorado Constitution. *Ficarra*, 849 P.2d at 11.

ment, SWEPI claims the BAA's application of the statute creates a new obligation for owners and operators of oil and gas leaseholds and lands. For the reasons set forth below, we disagree.

 We conclude that under the facts of this case, the BAA's calculation of delinquent interest under section 39–10–101(2)(d) is not retrospective in its operation. First, following the analysis set forth in *D.K.B.*, the mere fact that the tax years upon which the delinquent interest is calculated precede the effective date of the amendment changing the beginning date of accrual is not sufficient to render the application of section 39–10–101(2)(d) retrospective. To the contrary, where a taxpayer owes delinquent interest the change in the date that interest begins accruing is remedial in nature. The change in accrual date merely alters the amount of interest due, not the obligation to pay delinquent interest. This is consistent with our recent holding in *Kuhn*, 924 P.2d at 1057, where we stated a retroactive application is permissible where the change in the statute is merely remedial. Thus, the application of section 39–10–101(2)(d) in calculating delinquent interest for tax years 1985 to 1992 may be retroactive, but it is not retrospective.

Second, SWEPI's argument that a new obligation has been created by this application of section 39–10–101(2)(d) must also fail. Prior to 1992 when the amendment became effective, owners and operators of oil and gas lands and leaseholds were required to pay interest on taxes not paid in a timely manner. The amendment, by altering the date "interest shall be calculated to accrue from," changed only the date from which interest begins to accrue. That change did not create a new obligation or impose a new duty.

Third, while it is true that under the amendment the interest began to accrue from 1986 and not as of the 1992 assessment date, the obligation to pay interest on delinquent taxes existed prior to the amendment and arose upon the failure to timely pay the taxes due. It is only the amount of interest

that changed as a consequence of the amendment. Because of SWEPI's untimely filing of its declaration schedules, the *assessment* was not made until December 24, 1992.[12] Since section 39–10–101(2)(d) became effective April 10, 1992, an assessment made after that date established the amount owed.

The taxpayer's delinquent interest obligation existed before the amended statute's effective date. The amendment created a new calculation of delinquent interest altering the amount and not the fact of a delinquent interest obligation. Therefore, utilizing the new calculation did not constitute a retrospective application of the statute.

Section 39–10–101(2)(d), as amended, provides that interest began to "accrue from the date the taxes were due," as opposed to the date when the amount was assessed. Dolores County issued an assessment fixing the amount owed on December 24, 1992, after the statute was amended. The tax, however, was owed before it was assessed. The assessment was not the source of the obligation to pay the tax. The tax obligation arose from the act of producing or drawing the mineral production from the ground in 1985, creating an obligation prior to December 24, 1992. Therefore, the BAA's application of the interest remedy does not violate the constitutional prohibition against retroactive legislation.

IV.

 In sum, we hold that where a taxpayer fails to file the necessary declaration schedules and hence fails to disclose information necessary for the county assessor and the county treasurer to assess a tax, as compelled by section 39–7–101, equity will toll the running of the statute of limitations for assessing taxes set forth in section 39–10–101(2)(b)(I) until the taxpayer fulfills its statutory duty by filing the requisite schedules. In addition, we hold that the BAA's application of section 39–10–101(2)(b) to a tax obli-

---

**12.** Under the interest provision in effect before April 1992, interest was calculated from the date of the additional assessment, December 1992. However, as amended and effective April 1992, interest instead accrues from 1986, the date the tax was originally due.

We also note that section 39–10–101(2)(a), which provides authority for additional assessments, by its wording, operates retroactively. This section was not amended in 1992, thus it clearly applies to preceding tax years. *See also supra* note 7.

gation determined after that section's effective date so as to provide Dolores County with delinquent interest on the additional assessment for taxes due in 1986 does not constitute a retrospective or unconstitutionally retroactive application of the statute.

Accordingly, we affirm the judgment of the court of appeals tolling the statute of limitations and holding that the assessment of delinquent interest from 1986, the year the tax obligation should have been paid, was not retrospective.