Robert C. ROEHRS, Shirley L. Roehrs, Club Oil and Gas, Inc., J. Walter Duncan, Jr., Raymond T. Duncan and Walter Duncan, Inc., Plaintiffs–Appellees and Cross–Appellants,

v.

COUNTY OF MORGAN, Morgan County Board of County Commissioners, Morgan County Treasurer and Robert Sagel, in his official capacity as Treasurer, Defendants–Appellants and Cross–Appellees.

No. 98CA1126.

Colorado Court of Appeals, Div. II.

Sept. 30, 1999.

Rehearing Denied Dec. 2, 1999.

Astrella & Rice, P.C., T.R. Rice, Denver, Colorado, for Plaintiffs–Appellees and Cross–Appellants.

George N. Monsson, County Attorney, Douglas J. Marston, Assistant County Attorney, Morgan County Attorney's Office, Fort Morgan, Colorado, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge JONES.

Defendants, County of Morgan, Morgan County Board of Commissioners, and Robert Sagel, in his official capacity as Morgan County Treasurer, appeal the judgment entered against them and in favor of plaintiffs, Robert C. and Shirley L. Roehrs (the Roehrs); Club Oil and Gas, Inc.; and J. Walter Duncan, Jr., Raymond T. Duncan, and Walter Duncan, Inc. (the Duncans). The

plaintiffs cross-appeal on the issue of which statute of limitations should govern this action. We affirm the judgment as to the Roehrs, without considering the issues raised in the cross-appeal, and remand the cause with directions as to the other plaintiffs.

During tax years 1985 through 1987, plaintiffs were fractional mineral interest owners in some or all of the oil and gas wells known as the Welker No. 13–29, Welker No. 14–29, Welker No. 43–30, Johnson No. 31–30, and Johnson No. 42–30 (the fractional interests) located in Morgan County.

Pursuant to § 39–10–106, et seq., C.R.S. 1999, the unit operator is required to collect the taxes from the various fractional interest owners and remit them to the county. Here, the unit operator withheld, from plaintiffs' shares of the oil and gas production, the amounts equal to the taxes due to the county for tax years 1985 through 1987. He failed, however, to remit such amounts to the county to cover the fractional interest owners' tax obligations.

Because the treasurer did not receive the taxes for those tax years, he sent a letter, dated December 27, 1988, informing the Roehrs of the county's intention to sell the wells at an auction in order to recover the amount of their taxes. Upon notice of the impending tax sale, the Roehrs' attorney notified the treasurer, by letter, dated February 15, 1989, that the Roehrs considered the sale to be improper. Thereafter, the county canceled the sale, without informing the Roehrs of such cancellation. The Roehrs eventually learned of the cancellation from an outside source.

Again, by letter dated June 14, 1991, the county notified the Roehrs of its intention to sell the fractional interests by way of a tax sale on the following July 17. At that point, the Roehrs, on two separate occasions, spoke with the county treasurer.

In the first conversation, the Roehrs informed the treasurer that they had paid their taxes to the unit operator. In the subsequent conversation, the treasurer, acknowledging that he was aware that the plaintiffs had paid the amounts owing to the unit operator, represented to the Roehrs that he was working with the unit operator on a payment plan regarding the taxes that the unit operator had not remitted.

At the Roehrs request, their attorney, once again, contacted the county through letter, dated July 15, 1991, requesting that the county cancel the sale, because of the Roehrs' belief that it would be an illegal sale. This letter also stated:

> Should you decide to disregard the warnings contained in this letter, we would strongly recommend that you make available copies of this letter, to any potential purchasers at the sale inasmuch as we will immediately commence legal action as against Morgan County ... to set aside the sale should a sale take place.

Through the conversations and correspondence with the county, the Roehrs came to believe that the sale would not be held. In that regard, the Roehrs called the county treasurer and made one last attempt to determine the status of the sale. In that conversation, the treasurer took no steps to disabuse the Roehrs of their impression that the sale would not take place.

On July 17, 1991, unbeknownst to plaintiffs, the fractional interests were offered for sale. Because no purchasers came forward, the fractional interests were conveyed to the county, treasurer's certificates were issued, and the conveyances were recorded in the Morgan County real property records.

Finally, through letter, dated July 23, 1991, the Roehrs' attorney contacted the county requesting that the county:

> apply the payments of [the unit operator] to the ad valorem taxes given the fact that a number of interest owners who you now claim to be liable for the ad valorem taxes have already paid the same. The latter application is by far the more equitable result.

This request reflected the Roehrs understanding that the county had made arrangements with, and had received payments from, the unit operator.

There was no more contact between the parties until, on August 6, 1991, by letter sent to the treasurer and the Morgan County Board of Commissioners, the Roehrs reiter-

ated their belief that the sale had not taken place.

After receiving information from the new unit operator that the county was claiming ownership of the fractional interests, the Roehrs confirmed this information and, for the first time, gained actual knowledge of the "treasurer's certificates of sale."

The plaintiffs, thereafter, commenced this action in the district court, alleging, among other things, that the county improperly conducted the tax sale. Issues were also raised as to the applicable statute of limitations, as to the plaintiffs' claim that the county was estopped from asserting the statute of limitations defense, and as to whether certain other fractional interest owners, the Duncans, were proper parties plaintiff.

The court ruled in favor of defendants on the issue of the proper statute of limitations. However, it subsequently held that it would not dismiss the plaintiffs' case, stating that the defendants were estopped from asserting the statute of limitations defense because they had allowed the plaintiffs to rely on the erroneous assumption that the tax sale had not taken place. Thereafter, the court ruled in favor of the plaintiffs and ordered defendants to pay a money judgment to them. This appeal followed.

## I.

The county first contends that the trial court erred in holding that the county was estopped from asserting a statute of limitations defense. We disagree.

We note, initially, that plaintiffs contend in their cross-appeal that the trial court erred in applying the two-year period provided in § 13–80–101(1)(h), C.R.S.1999. However, we need not consider whether the court's determination is correct as to this issue because we agree with the trial court that, under the circumstances here, the county is estopped from asserting the affirmative defense of the statute of limitations.

The essential elements of equitable estoppel, as set forth in *Aubert v. Town of Fruita,* 192 Colo. 372, 374, 559 P.2d 232, 234 (1977), are:

(1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are other than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention or at least an expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming estoppel, they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

■ Here, after hearing the testimony of the parties, the trial court concluded that the defendants had concealed the material fact of the tax sale, and had proceeded in a manner calculated to cause the Roehrs not to know of the sale, so that they could not challenge it. Furthermore, the trial court found that the county, throughout its communications with the Roehrs, was aware that the tax sale proceedings had begun.

The record supports the trial court's finding that the Roehrs did not have knowledge of the essential facts as to whether a tax sale would be held, and that they had taken the appropriate steps to obtain such knowledge, "namely, asserting ... to the county their expectation that they would be promptly disabused of their mistake if, in fact, they were mistaken [and a sale was to be held]." Hence, that finding is binding on appeal. *See Peterson v. Ground Water Commission,* 195 Colo. 508, 579 P.2d 629 (1978)(reversal of trial court's findings of fact warranted only when such are so clearly erroneous as to find no support in record.)

Through the letters written by the Roehrs' attorney, and the telephone calls made by the Roehrs, the defendants were given ample opportunity to correct the Roehrs' misunderstanding, which they chose not to do. Because the defendants' conduct led to the Roehrs' failure to institute timely action, the defendants are estopped from relying upon the resulting delay as a defense to the Roehrs' claim. *See Shell Western E & P,*

*Inc. v. Dolores County Board of Commissioners,* 948 P.2d 1002 (1997).

## II.

Defendants next contend that the trial court erred in holding that the tax sale of the fractional interests was improper. Specifically, defendants assert that the trial court erred in ruling that the sale was violative of Colo. Sess. Laws 1987, ch. 298, § 39–10–106(4)(a) at 1421 because the property taxes on the plaintiffs' fractional interests had been collected but not paid to the county. While our rationale differs slightly from that of the trial court, we determine that it did not err.

■ Statutes are to be construed as a whole to give a consistent, harmonious, and sensible effect to all their parts. When a court interprets a comprehensive legislative scheme, it must "give meaning to all portions thereof and construe the statutory provisions to further the legislative intent." *See Board of County Commissioners v. Bainbridge, Inc.,* 929 P.2d 691, 699 (Colo.1996).

■ If statutory language is clear and unambiguous, the statute should be applied as written, but, nevertheless, a court may also consider other indicia of legislative intent, such as the object to be attained by the legislation, the legislative history, and the consequences of a particular construction. *See Lot Thirty–Four Venture, L.L.C. v. Town of Telluride,* 976 P.2d 303 (Colo.App. 1998).

■ Although a presumption exists that the General Assembly intends to change the law by amending a statute, this presumption may be rebutted when arguably more specific sections are added to a general section. *See People v. Davis,* 794 P.2d 159 (Colo. 1990). Subsequent legislative declarations concerning the intent of an earlier statute are not controlling; however, they are entitled to significant weight. *See People v. Holland,* 708 P.2d 119 (Colo.1985); *Portofino Corp. v. Board of Assessment Appeals,* 820 P.2d 1157 (Colo.App.1991).

■ Furthermore, a court may find that the legislative amendment was intended to clarify a previously existing statute when "the legislative history or the language of a statute [as amended] clearly indicates an intent to clarify." *Swieckowski v. City of Fort Collins,* 934 P.2d 1380, 1385 (Colo.1997).

■ As it existed in 1987, and still exists today, *see* § 39–10–106(2), C.R.S.1999, the controlling statute designates the unit operator as the party that "shall collect from the owners of the fractional interests and remit to the treasurer ... the tax levied against the entire unit." Other duties of the unit operator include to "prepare, sign, under the penalty of perjury in the second degree, and file ..." with the County Assessor, a statement of production, quantity sold or transported, and the price received for the production. Colo. Sess. Laws 1987, ch. 454, § 39–7–101 at 1857. Thus, it is clear that the General Assembly intended to make certain duties of the unit operator mandatory, and intended that unit operators are to be held liable for failure to comply with such duties.

Prior to the adoption of Colo. Sess. Laws 1987, ch. 298, § 39–10–106(4)(a), the controlling statute provided, in pertinent part:

> Failure of the unit operator ... to collect and remit the tax ... shall not preclude the treasurer from utilizing lawful collection and enforcement remedies and procedures against the owner of any fractional interest to collect the tax owed by such owner...."

Colo. Sess. Laws 1971, ch. 338, § 137–10–6(4) at 1247.

According to this predecessor statute, a fractional interest owner's liability could have been triggered if the unit operator, both failed to collect and failed to remit the taxes to the county. *See* J. Steiert, *Delinquent Oil and Gas Ad Valorem Taxes: Protecting Property Interests,* 16 Colo. Law. 801 (May 1987).

In 1987, the General Assembly, through S.B. 87–198, deleted the word "remit" from § 39–10–106(4)(a), and left the remainder of that subsection as it currently reads. The defendants argue that such amendment, therefore, reflected the General Assembly's intent to change the liability of the fractional interest owners. *See* Colo. Sess. Laws 1987, ch. 298, § 39–10–106(4)(a) at 1421. They

reach this conclusion by inferring that, pursuant to the present statutory language, counties cannot, through a tax sale, execute against fractional interest owners who have paid the taxes, even if they have not been remitted to the county, and that, therefore, it conclusively follows that prior to the amendment, the counties *could* proceed in such a manner. We disagree.

We conclude that, by deleting the word "remit" from § 39–10–106(4)(a), the General Assembly clarified the existing statute. *See People v. Davis, supra.* The statute, as amended, more accurately reflects the General Assembly's prior intent to hold liable the party that fails to pay the amount of taxes due, whether it be the fractional interest owner or the unit operator. *See Board of County Commissioners v. Bainbridge, Inc., supra.*

The legislative history of the 1987 amendment confirms our conclusions regarding the General Assembly's intention to clarify, not change, the statute. During a Senate committee hearing regarding the proposed legislation, in introducing Senator Donley, one of the Senate sponsors of S.B. 87–198, Senator McCauley, in referring to the amendments, states that: "[They] are corrective in nature as I understand it." Senator Donley confirms Senator McCauley's statement. *See* Hearings on S.B. 198 before the Senate Agricultural Committee, 56th General Assembly, 1st Session (March 26, 1987).

In his statements concerning the bill, particularly as it relates to unit operators, Senator Donley states that the legislation is meant to clarify that "when the tax is remitted to the [unit operators] by the taxpayers and the [unit operators] are found with the money of the taxpayers, that the [unit operators'] directors and officers remain personally liable for that money."

Furthermore, before a committee of the House of Representatives that was considering S.B. 87–198, Representative Norton characterizes the pertinent amendments as "technical corrections." Referring to the amendatory language, he first states that it "clarifies language" in the original statute; reports that other parts are "a clarification" of the original statute; and finally, states

that another part is "more clarifying language." *See* Hearings on S.B. 198 before the House Agricultural Committee, 56th General Assembly, 1st Session (April 9, 1987).

Another, unidentifiable, State Representative, addressing the House committee, states that she understands that: "[T]here is a problem with double payment [by taxpayers].... [The] amendments make [the statute] a little clearer." *See* Hearings on S.B. 198 before the House Agricultural Committee, 56th General Assembly, 1st Session (April 9, 1987).

When, as here, the unit operator collects the taxes directly from the fractional interest owners or withholds the taxes from their production proceeds, and then fails to remit such amounts to the counties, it is sensible that the unit operator should be held liable for the failure to remit rather than the fractional interest owners. This is precisely the situation that the General Assembly intended to address and clarify when it amended § 39–10–106(4)(a) to provide that the fractional interest owners, having paid the taxes, could not be held liable.

This comprehensive legislative scheme is further evidenced by other statutes relating to property tax and collection thereof. For example, § 39–7–108, C.R.S.1999, entitled "collection," provides,

Beginning January 1, 1980, when taxes on oil and gas leaseholds and lands are due, such taxes shall be a debt due from the owner *or* the unit operator *as the case may be* .... (emphasis added)

The plain meaning of § 39–7–108 is that unpaid taxes are a debt due to the county, and the county's action is to proceed against either the owner or the unit operator, depending upon which party is the "debtor." Read in the context of the entire statutory scheme, it serves to relieve that party which has met its obligations under the statute from liability.

As we noted previously, the General Assembly's deletion of the word "remit" from § 39–10–106(4)(a), simply clarified its intent to hold unit operators liable when, as here, the unit operators collect the taxes from the

fractional interest owners but fail to remit. The General Assembly further clarified this intention by adding two additional sections to § 39–10–106, et seq., C.R.S.1999.

Section 39–10–106(4)(b)(I), C.R.S.1999, provides:

> When the tax has been collected from the owners of fractional interests by the unit operator ... but the unit operator fails to remit such tax collected, the unit operator shall remain liable for the amount of the tax owed.

Section 39–10–106(4)(b)(III), C.R.S.1999, provides:

> The tax liability of the owner of any fractional interest in such unit whose proportionate share of tax was withheld from royalty or working interest payments by the unit operator ... but was not remitted by the unit operator ... to the treasurer shall be deemed satisfied to the extent of the amount withheld, and such owner shall not be subject to any collection and enforcement remedies and procedures provided by law for the collection of such delinquent tax for which an amount was withheld from royalty or working interest payments pursuant to the provisions of this section.

Thus, §§ 39–10–106(4)(b)(I) and 39–10–106(4)(b)(III) unambiguously reveal the General Assembly's intent to hold unit operators liable in the situation where the unit operators collect the amount due for taxes from fractional interest owners, but illegally fail to remit. Because the legislative history of the 1987 amendments demonstrates an intent to clarify, not change, the law, we do not interpret the prior statute as mandating a different result.

In accordance with the General Assembly's intent, we determine that, here, the defendants' sale of the Roehrs' fractional interests was improper under Colo. Sess. Laws 1987, ch. 298, § 39–10–106(4)(a) at 1421. Accordingly, the trial court did not err in so finding, even if based on a different rationale. *See People v. Cerrone,* 780 P.2d 562 (Colo.App. 1989).

## III.

Finally, defendants contend that the trial court erred in entering judgment in favor of the Duncan plaintiffs and Club Oil and Gas, Inc. We conclude that remand is required.

Defendants argue that, regardless whether the judgment in favor of the Roehrs is affirmed, the slight evidence in the record regarding the property interests of the plaintiffs other than the Roehrs cannot support judgment in favor of those plaintiffs.

We conclude that the trial court's findings regarding these plaintiffs are such that we cannot review this issue. Accordingly, the cause must be remanded so that the trial court can enter findings of fact and conclusions of law clarifying any judgment with respect to these plaintiffs. In this regard, the trial court may rely on the current record, or may order additional evidence and argument from the parties.

Accordingly, the judgment is affirmed in all respects, except that it is vacated as to the plaintiffs other than the Roehrs. As to those remaining plaintiffs, the cause is remanded for further proceedings consistent with the views set forth in this opinion.

Judge PLANK and Judge VOGT concur.